Citation Nr: 1452673 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 12-24 465 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New Orleans, Louisiana


THE ISSUES

1. Entitlement to an increased rating in excess of 30 percent for bilateral pes planus. 

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

K. Anderson, Associate Counsel 


INTRODUCTION

The Veteran had active military service from April 1993 to April 1997. 

This case comes before the Board of Veterans' Appeals (Board) from a July 2009 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri. Subsequently, jurisdiction over this matter has been transferred to the RO in New Orleans, Louisiana. 

In July 2014, the Veteran testified during a board hearing, via videoconference, that was held before the undersigned Veteran's Law Judge (VLJ). A transcript of the hearing is included in the claims file. 

The issue of TDIU is being REMANDED and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the appellant if further action is required.


FINDING OF FACT

The Veteran's pes planus is manifested by pain, swelling, marked deformity, inward bowing of the Achilles tendon; without relief from arch supports or orthopedic shoes or appliances. 






CONCLUSION OF LAW

The schedular criteria for an increased rating to 50 percent, for bilateral pes planus have been met. 38 U.S.C.A. § 1155, 5103, 5107 (West 2002); 38 C.F.R. § 3.103, 3.159, 4.1-4.14, 4.71a, Diagnostic Code 5276 (2014). 


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran contends that the current rating evaluation does not accurately reflect the severity of his disability. Having carefully considered the claim in light of the record and the applicable law, the Board is of the opinion that an increased evaluation is warranted. 

Disability evaluations are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify various disabilities and the criteria for specific ratings. 

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.1. After careful consideration of the evidence, any reasonable doubt remaining will be resolved in favor of the veteran. 38 C.F.R. § 4.3. 

While the veteran's entire history is reviewed when assigning a disability evaluation, 38 C.F.R. § 4.1, where service connection has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994).

The Veteran's pes planus is currently rated at 30 percent under Diagnostic Code 5276. A maximum 50 percent rating is in order for bilateral pes planus that is pronounced, with marked pronation, extreme tenderness of plantar surfaces of the feet, marked inward displacement and severe spasm of the tendo achilles on manipulation, not improved by orthopedic shoes or appliances. 38 C.F.R. § 4.71a.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

The Veteran underwent a VA examination in August 2012. The evaluator continued the Veteran's diagnosis of bilateral pes planus. The Veteran has multiple treatment modalities including orthopedics, replexa treatments, and intermittent steroid injections. At the time of the examination, the Veteran was currently taking hydrocodone. Upon examination, there was objective evidence that the Veteran had pain on use of the feet that is accentuated on use. The Veteran had pain on manipulation of the feet that was accentuated on manipulation. There was objective indication of swelling, but no calluses were present. The Veteran's symptoms were not relieved by arch supports or other orthodics. The examiner noted that he had extreme tenderness of the plantar surface that was not improved by orthopedic shoes or appliances. The Veteran had decreased longitudinal arch height on weight-bearing and marked deformity of his feet. There was no objective evidence of marked pronation, but he had inward bowing of the Achilles' tendon. Lastly, the examiner noted that the Veteran reported to the examination ambulatory with a slight antalgic gait and wearing orthopedic shoes. 

The Veteran's disability is currently being followed by a VA podiatrist. A podiatry note from July 2008 states that Veteran has chronic foot pain without any relief from various treatments. The podiatrist injected the Veteran with lidocaine and recommended that he continue with taking Motrin for pain. 

The Veteran submitted two buddy statements to support his claim. The first one, dated July 2014, is from his manager at his place of employment, Mr. A.F. A.F. reports that the Veteran is only able to work two days a week due to his disability. The second buddy statement, dated March 2014, is from Mr. T. P. T.P. reports that he has noticed that the Veteran's disability causes him to have difficulty walking and standing, which affects his ability to work. 

At the Veteran's July 2014 hearing, he reported the difficulty he was having with his disability, including constant burning pain. His ability to ambulate and stand has been greatly diminished. He reports that his ability to work has been affected by his disability and that none of the VA treatment plans has brought him any relief. 

Given the evidence of record, especially the VA examination from August 2012 and the VA treatment notes from 2004-2008, show that his disability more closely approximates a 50 percent evaluation. The Veteran has marked pronation, extreme tenderness, marked inward displacement and his disability is not improved by orthopedic shoes or appliances. The only criteria the Veteran did not have are severe spasm of the tendo achillis on manipulation; however, this is not a bar to an increased evaluation to 50 percent disabling. 

The Board notes that a 50 percent evaluation is the highest schedular evaluation available under Diagnostic Code 5276. Although the Board considered other potentially applicable diagnostic codes, the Board further finds that the Veteran's bilateral pes planus does not warrant a higher rating under a different Diagnostic Code for any rating period. In this case the only other Diagnostic Code that could potentially result in a higher evaluation would be evaluating the feet separately under Diagnostic Code 5284. In this regard, however, the pes planus is not analogous to either a severe foot disability, bilaterally, or to actual loss of use of either foot. Within the context of the Diagnostic Codes for musculoskeletal disabilities of the foot, the word "other" can only mean disabilities other than those for which specific DCs exist. See generally 38 C.F.R. § 4.71a, DCs 5276-5284. Because DC 5276 specifically rates bilateral flatfoot, the disability under consideration here, DC 5284 is not for application based on its own terms. 

In exceptional cases where schedular disability ratings are found to be inadequate, consideration of an extra-schedular disability rating is made. 38 C.F.R. § 3.321(b)(1). There is a three-step analysis for determining whether an extra-schedular disability rating is appropriate. See Thun v. Peake, 22 Vet. App. 111 (2008). First, there must be a comparison between the level of severity and symptomatology of the Veteran's service-connected disability and the established criteria found in the rating schedule to determine whether the Veteran's disability picture is adequately contemplated by the rating schedule. Id. If not, the second step is to determine whether the claimant's exceptional disability picture exhibits other related factors identified in the regulations as "governing norms." Id.; see also 38 C.F.R. § 3.321(b)(1) (governing norms include marked interference with employment and frequent periods of hospitalization). If the factors of step two are found to exist, the third step is to refer the case to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for a determination whether, to accord justice, the claimant's disability picture requires the assignment of an extra- schedular rating. Id.

In the present case, the Veteran's symptoms are most analogous to pronounced pes planus; to include marked pronation, extreme tenderness, marked inward displacement and a disability that is not improved by orthopedic shoes or appliances. The currently assigned Diagnostic Code considers all of these symptoms and as such, the Veterans has been increased to reflect such symptomatology. As the rating criteria adequately contemplates the Veteran's symptoms, the first step of Thun has not been met and referral for the assignment of an extraschedular disability rating is not warranted.

Further in Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014) a veteran may be entitled to "consideration under 38 C.F.R. § 3.321(b) for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. 

In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. In this case, there is neither allegation nor indication that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. 

Duty to Assist and Notify 

Since the entire benefit sought on appeal has been granted, no purpose would be served by undertaking an analysis of whether there has been compliance with the notice and duty to assist requirements set out in the Veterans Claims Assistance Act (VCAA) of 2000 (codified at 38 U.S.C.A. §§ 5100, 5102-5103A, 5106, 5107, 5126 (West 2002)). See, e.g., Bernard v. Brown, 4 Vet. App. 384 (1993); VAOPGCPREC 16-92, 57 Fed. Reg. 49,747 (1992).


ORDER

A higher evaluation of 50 percent for bilateral pes planus is granted, subject to the laws and regulations governing the award of monetary benefits. 


REMAND

A preliminary review of the record discloses a need for further development prior to final review.

The Veteran sought an increased evaluation for pes planus. The U.S. Court of Appeals for Veterans Claims (Court) has held that a request for a TDIU, whether expressly raised by the Veteran or reasonably raised by the record, is not a separate "claim" for benefits, but rather, is part of a claim for increased compensation. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). In other words, if a claimant or the evidence of record reasonably raises the question of whether the Veteran is unemployable due to a disability for which an increased rating is sought, then part and parcel with the increased rating claim is the issue of whether a TDIU is warranted as a result of that disability. Id. 

In the present case, the Veteran testified that he worked as a barber and indicated that for the past couple years he only worked about two days a week due to pain from his pes planus. As noted above, the Veteran submitted a July 2014 statement from his manager at his place of employment, Mr. A.F. who reported the Veteran is only able to work two days a week due to his disability. 

While the record reflects that the Veteran is currently employed, it is unclear whether his current employment constitutes substantially gainful employment. TDIU may be assigned when the disabled person is unable to secure or follow a substantially gainful occupation. 38 C.F.R. § 4.16(a). The regulation explains that marginal employment shall not be considered "substantially gainful employment." Marginal employment is defined as employment where a Veteran's earned annual income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Id.; see also Faust v. West, 13 Vet. App. 342 (2000). Marginal employment may also be found in some cases when earned annual income exceeds the poverty threshold, such as cases where there is employment in a protected environment, such as a family business or sheltered workshop. Id. The evidence seems to suggest that the Veteran's current and relatively recent employment may be "marginal employment," given the part-time hours and frequent time missed from work. On remand, the RO should request that the Veteran provide evidence pertaining to his annual income.

In light of the above, the Board finds the Veteran has raised a claim for TDIU. While a claim for TDIU has been raised, the Board notes that entitlement to a TDIU has not been developed or adjudicated by the RO. In this regard, the RO/AMC should send the Veteran a VCAA notice letter for the TDIU claim. This letter should notify the Veteran and his representative of any information, including lay or medical evidence, that was not previously provided and that is necessary to substantiate the TDIU claim. The notice should also indicate what information or evidence should be provided by the Veteran and what information or evidence VA will attempt to obtain on the Veteran's behalf. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159; see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

Additionally, the Board finds that a VA examination is necessary. The Court has held that, in the case of a claim for TDIU, the duty to assist requires that VA obtain an examination which includes an opinion on what effect the service-connected disabilities have on a Veteran's ability to work. Friscia v. Brown, 7 Vet. App. 294, 297 (1994). As such, a medical opinion is needed to resolve the issue of entitlement to TDIU.

Accordingly, the case is REMANDED for the following action:
 
1. Provide the Veteran with appropriate notice and assistance regarding the issue of entitlement to TDIU.

2. Contact the Veteran and request that he provide proof of his annual salary, such as copies of salary statements, wage receipts, W-2s, and/or tax returns for each year. 

3. Schedule the Veteran for a Social and Industrial Survey to ascertain if the Veteran's service-connected disabilities alone preclude him from securing and maintaining substantially gainful employment in light of his work history and level of education. The Veteran's claims file should be made available to the examiner and reviewed in connection with the examination. 

4. Following the completion of the above, and any other development deemed necessary, adjudicate the claim for entitlement to TDIU. If the claim is denied, he should be provided a Supplemental Statement of the Case and an opportunity to respond before the record is returned to the Board for further appellate review.


The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B , 7112.



____________________________________________
H. SEESEL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs