Citation Nr: 1703142 
Decision Date: 02/02/17 Archive Date: 02/15/17

DOCKET NO. 09-38 267 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUES

1. Entitlement to an increased rating greater than 40 percent for degenerative disk and joint disease of the lumbar spine, associated with Reiter's syndrome.

2. Entitlement to an increased rating greater than 30 percent for degenerative disk and joint disease of the cervical spine, associated with Reiter's syndrome.

3. Entitlement to an increased rating greater than 10 percent for degenerative joint disease of the left knee, associated with Reiter's syndrome.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

M. Katz, Counsel


INTRODUCTION


The Veteran served on active duty from November 1968 to May 1973. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a May 2008 rating decision by the Department of Veterans Affairs (VA) Regional Office in Oakland, California (RO) which denied entitlement to an increased rating greater than 40 percent for Reiter's syndrome. In a September 2009 rating decision, the RO replaced the 40 percent disability rating for Reiter's syndrome with three separate ratings for disabilities associated with Reiter's syndrome: a 40 percent rating for degenerative disk and joint disease of the lumbar spine; a 30 percent rating for degenerative disk and joint disease of the lumbar spine; and a 10 percent rating for degenerative joint disease of the left knee.

The September 2009 rating decision also granted entitlement to a total disability rating based upon individual unemployability (TDIU), effective December 12, 2008. The Veteran did not appeal the effective date of the award for TDIU, and the evidence in the claims file reflects that he was employed until December 2008. Accordingly, the issue of entitlement to a TDIU prior to December 12, 2008 is not before the Board. See Rice v. Shinseki, 22 Vet. App. 447 (2009).

The issues of entitlement to service connection for ulcerative colitis, hyperglycemia, and diabetic ketoacidosis have been raised by the record in a July 2013 VA examination which linked these disabilities with medication prescribed for treatment of a service-connected lumbar spine disability, but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over them, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2016). 

The appeal is REMANDED to the AOJ. VA will notify the appellant if further action is required.
REMAND

The Board regrets the delay of an additional remand, but finds the VA examinations conducted in April 2016 with regard to the service-connected lumbar spine disability, cervical spine disability, and left knee disability to be inadequate for the reasons explained below. Accordingly, new VA examinations are required.

With regard to the April 2016 VA examinations provided for the lumbar and cervical spines, and left knee disabilities, the Board finds them to be internally inconsistent, and therefore inadequate. The lumbar spine examination provided range of motion findings of the lumbar spine reported as flexion to 80 degrees, extension to 20 degrees, right and left lateral flexion to 30 degrees, and right and left lateral rotation to 30 degrees. The examiner stated that there was no pain on range of motion testing and there was no additional loss of range of motion with repetitive use testing. However, the examination report later identifies additional factors contributing to disability to include "[l]ess movement than normal due to ankylosis, adhesions, etc. . . ." Similarly, the cervical spine examination provided range of motion findings of the cervical spine reported as flexion to 45 degrees, extension to 30 degrees, right lateral flexion to 30 degrees, left lateral flexion to 35 degrees, and right and left lateral rotation to 80 degrees. There was no pain with range of motion testing and there was no additional loss of range of motion with repetitive use testing. Thereafter, the examiner stated that additional factors contributing to disability included "[l]ess movement than normal due to ankylosis, adhesions, etc. . . ." The left knee examination reported range of motion findings with flexion to 120 degrees and extension to 0 degrees. The examiner later reported that additional factors contributing to disability included "[l]ess movement than normal due to ankylosis, adhesions, etc. . . ." 

Ankylosis defined as immobility and consolidation of a joint due to disease, injury, or surgical procedure. See Lewis v. Derwinski, 3 Vet. App. 259 (1992). Therefore, the range of motion findings reported in the lumbar spine, cervical spine, and left knee examinations, which show nearly full range of motion, are inconsistent with the later reports of ankylosis. Because of these internal inconsistencies pertaining to range of motion of the lumbar and cervical spines and the left knee, the examinations are inadequate and new examinations are required.

Additionally, the April 2016 left knee examination reported that there was evidence of pain with left knee flexion which caused functional loss, but did not state at what point pain began. For disabilities evaluated on the basis of limitation of motion, VA is required to apply the provisions of 38 C.F.R. §§ 4.40, 4.45 (2016), pertaining to functional impairment. The United States Court of Appeals for Veterans Claims (Court) has instructed that in applying these regulations VA should obtain examinations in which the examiner determines whether the disability is manifested by weakened movement, excess fatigability, incoordination, pain, or flare ups. These determinations are, if feasible, to be expressed in terms of the degree of additional range-of-motion loss due to any weakened movement, excess fatigability, incoordination, flare-ups, or pain. The examiner must also determine the point, if any, at which such factors cause functional impairment. Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011); DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. § 4.59 (2016).

In the instant case, although the VA examiner noted objective evidence of pain with left knee range of motion, the examiner made no specific finding as to the degree of range of motion loss due to pain on use. In Mitchell, the Court found similar examination findings to be inadequate because the examiner did not explicitly report "whether and at what point during the range of motion the appellant experienced any limitation of motion that was specifically attributable to pain." Mitchell, 25 Vet. App. at 44. The Court stressed that such a finding is important in providing a "clear picture of the nature of the veteran's disability and the extent to which pain is disabling," so as to "allow the Board to ensure that the disabling effects of pain are properly considered when evaluating any functional loss due to pain that is attributable to the veteran's disability." Id. Where this information is not provided in the examination report, or the report does not include an explanation for why this information could not feasibly be provided, the examination report is inadequate for rating purposes. Id. at 44. Accordingly, the April 2016 VA knee examination report is inadequate, and a new VA examination is necessary.

Finally, in a recent case, the United States Court of Appeals for Veterans Claims (Court) held that "to be adequate, a VA examination of the joints must, wherever possible, include the results of the range of motion testing described in the final sentence of" 38 C.F.R. § 4.59 . See Correia v. McDonald, 28 Vet. App. 158 (2016). 38 C.F.R. § 4.59 (2016) states that "[t]he joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint." As such, pursuant to Correia, an adequate VA joints examination must, wherever possible, include range of motion testing on active and passive motion and in weight-bearing and nonweight-bearing conditions.

Accordingly, the case is REMANDED for the following action:

1. Provide the Veteran with a new VA examination to determine the current severity of his service-connected lumbar spine disability. The Veteran's claims file and a copy of this Remand must be reviewed by the examiner. All pertinent symptomatology and findings must be reported in detail. Any diagnostic tests deemed necessary for an accurate assessment must be conducted. The examiner must record all pertinent medical complaints, symptoms, and clinical findings, in detail. 

The examiner must determine the range of motion of the Veteran's lumbar spine, in degrees, noting by comparison the normal range of motion of the lumbar spine. The VA examiner must specifically state whether there is any favorable or unfavorable ankylosis in the lumbar spine. The examiner must also state whether there is weakened movement, excess fatigability, incoordination, or other functional impairment attributable to the service-connected lumbar spine disorder. The examiner must report the additional functional limitation in degrees of additional limitation due to weakened movement, excess fatigability, incoordination, flare-ups, or pain. Finally, an opinion must be stated as to whether any pain found in the lumbar spine could significantly limit functional ability during flare-ups or during periods of repeated use, noting the degree of additional range of motion loss or favorable or unfavorable ankylosis due to pain on use or during flare-ups. 

The examiner must also state whether the Veteran has intervertebral disc syndrome; if so, the examiner must state whether the Veteran experiences incapacitating episodes requiring bedrest prescribed by a physician and treatment by a physician, and note the frequency and total duration of such episodes over the course of the past 12 months.

With respect to range of motion testing, this must be conducted on active and passive motion and in weight-bearing and nonweight-bearing conditions (pursuant to Correia v. McDonald, 28 Vet. App. 158 (2016)). If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so.

The examiner must describe functional limitations resulting from the Veteran's lumbar spine disability. A complete explanation and rationale must be provided for any opinion stated.

2. Provide the Veteran with a new VA examination to determine the current severity of his service-connected cervical spine disability. The Veteran's claims file and a copy of this Remand must be reviewed by the examiner. All pertinent symptomatology and findings must be reported in detail. Any diagnostic tests deemed necessary for an accurate assessment must be conducted. The examiner must record all pertinent medical complaints, symptoms, and clinical findings, in detail. 

The examiner must determine the range of motion of the Veteran's cervical spine, in degrees, noting by comparison the normal range of motion of the cervical spine. The VA examiner must specifically state whether there is any favorable or unfavorable ankylosis in the cervical spine. The examiner must also state whether there is weakened movement, excess fatigability, incoordination, or other functional impairment attributable to the service-connected cervical spine disorder. The examiner must report the additional functional limitation in degrees of additional limitation due to weakened movement, excess fatigability, incoordination, flare-ups, or pain. Finally, an opinion must be stated as to whether any pain found in the cervical spine could significantly limit functional ability during flare-ups or during periods of repeated use, noting the degree of additional range of motion loss or favorable or unfavorable ankylosis due to pain on use or during flare-ups. 

With respect to range of motion testing, this must be conducted on active and passive motion and in weight-bearing and nonweight-bearing conditions (pursuant to Correia v. McDonald, 28 Vet. App. 158 (2016)). If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so.

The examiner must also state whether the Veteran has intervertebral disc syndrome; if so, the examiner must state whether the Veteran experiences incapacitating episodes requiring bedrest prescribed by a physician and treatment by a physician, and note the frequency and total duration of such episodes over the course of the past 12 months.

The examiner must describe functional limitations resulting from the Veteran's cervical spine disability. A complete explanation and rationale must be provided for any opinion stated.

3. Provide the Veteran with a new VA examination to determine the current severity of her service-connected left knee disability. The Veteran's claims file and a copy of this Remand must be reviewed by the examiner. All pertinent symptomatology and findings must be reported in detail. Any diagnostic tests deemed necessary for an accurate assessment must be conducted. The examiner must record all pertinent medical complaints, symptoms, and clinical findings, in detail. 

The examiner must report the left knee range of motion in degrees, and specifically identify the degree at which pain first appears on flexion and extension of the left knee. The examiner should discuss the presence or absence of any weakened movement, excess fatigability with use, incoordination, painful motion, and pain with repetitive use, and provide an opinion as to how these factors result in any additional limitation of knee function. The examiner must discuss whether pain significantly limits functional ability during flare-ups or when the left knee is used repeatedly over a period of time. This determination should be portrayed in terms of the degree of additional range of motion loss.

With respect to range of motion testing, this must be conducted on active and passive motion and in weight-bearing and nonweight-bearing conditions (pursuant to Correia v. McDonald, 28 Vet. App. 158 (2016)). If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so.

4. Notify the Veteran that it is his responsibility to report for the examinations and to cooperate in the development of the claims. The consequences for failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. §§ 3.158, 3.655 (2016).

5. When the above development has been completed, readjudicate the issues on appeal. If any benefit sought on appeal remains denied, provide an additional supplemental statement of the case to the Veteran and his representative, and afford the Veteran and his representative an adequate opportunity to respond, prior to returning those issue to the Board for appellate review.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).








This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
MICHAEL MARTIN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).