﻿Citation Nr: AXXXXXXXX
Decision Date: 03/31/21 Archive Date: 03/31/21

DOCKET NO. 200324-74109
DATE: March 31, 2021

ORDER

For the period prior to and after February 5, 2019, an initial 70 percent rating for posttraumatic stress disorder (PTSD) is granted, subject to the laws and regulations governing the award of monetary benefits.

From February 5, 2019, a rating in excess of 70 percent for service-connected PTSD is denied.

A total disability rating based on individual unemployability (TDIU) is granted.

Entitlement to basic eligibility to Dependents' Educational Assistance (DEA) benefits under Chapter 35, Title 38 U.S.C., is granted.

 

FINDINGS OF FACT

1. For the period prior to and after February 5, 2019, the Veteran’s PTSD symptoms have resulted in occupational and social impairment with deficiencies in most areas.

2. From February 5, 2019, the Veteran’s PTSD symptoms have not resulted in total occupational and social impairment, 

3. The Veteran’s service-connected disabilities precluded him from securing or following substantially gainful employment.

4. TDIU is shown by the record, which includes entitlement to DEA benefits. 

CONCLUSIONS OF LAW

1. For the period prior to and after February 5, 2019, the criteria for an initial 70 percent rating for service-connected PTSD are met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. § 3.102, 4.3, 4.7, 4.130, Diagnostic Code (DC) 9411.

2. For the period from February 5, 2019, the criteria for an initial 100 percent rating for service-connected PTSD are not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. § 3.102, 4.3, 4.7, 4.130, DC 9411.

3. The criteria for a TDIU are met. 38 U.S.C. § 1155; 38 C.F.R. §§ 4.16. 

4. The criteria for basic eligibility to DEA benefits are met. 38 U.S.C. §§ 3500, 3501; 38 C.F.R. § 3.807. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from January 2009 to October 2012. 

With respect to the claim for increase for PTSD, the case originally arose from a September 25, 2013 rating decision under the Legacy system which initially granted, in pertinent part, a 10 percent disability rating for his psychiatric disorder effective October 22, 2012. Thereafter, the Veteran continuously prosecuted his appeal. Following a February 2018 rating decision, the Veteran opted into the modernized review system of the Appeals Modernization Act (AMA) by electing a Higher Level Review. See May 2018 Ramp Opt-In election form. Thus, the Board’s review is limited to the evidence of record at the time of May 7, 2018, opt-in.

In a most recent July 2019 rating decision, the RO increased the Veteran’s PTSD from a 30 percent to a 70 percent disability rating effective February 5, 2019. Following the July 2019 rating decision, the Veteran submitted a notice of disagreement (NOD), requesting a Direct Review by a Veterans Law Judge. See 38 C.F.R. § 19.2(d)(2). 

In the July 2019 rating decision, the RO also denied entitlement to a TDIU. The RO found that new and relevant evidence has been received to readjudicate a previously denied claim for a TDIU. In reaching that determination, the RO considered a February 5, 2017 TDIU claim. However, evidence associated with the Veteran’s claims file prior to the July 2019 rating decision for the PTSD rating claim reasonably raises the issue of a TDIU. As the TDIU claim is an issue that is part and parcel of the original increase rating claim for PTSD pursuant to Rice v. Shinseki, 22 Vet. App. 447 (2009), the previously denied TDIU claim stemming from the increase rating claim for PTSD remains on appeal. See Harper v. Wilkie, 30 Vet. App. 356 (2018). 

Lastly, there is a question raised by the Veteran’s representative attorney indicating that VA should not have combined the Veteran’s service-connected cerebellar atrophy rating with the Veteran’s PTSD rating, and that the Veteran’s cerebellar atrophy and traumatic brain injury (TBI) should have separate ratings. See November 2019 NOD. First, the Board notes that a separate rating for cerebellar atrophy has been in effect under Diagnostic Code 8014 since October 24, 2012, the date following the Veteran’s separation from active duty. As for the separate rating for a TBI, the Board notes that the Veteran is not service-connected for a TBI. See February 5, 2016 rating decision. Furthermore, the issue of a separate rating for a TBI was not addressed by the August 2019 rating decision and therefore, the Board lacks jurisdiction to address this matter. If the Veteran or his representative are seeking to establish a service connection for a TBI, they may do so by filing a Supplemental Claim so that appropriate action can be taken. See 38 C.F.R. § 3.1(p), 3.160, 3.2500. 

The Board has limited the discussion below to the relevant evidence required to support its finding of fact and conclusion of law, as well as to the specific contentions regarding the case as raised directly by the Veteran and those reasonably raised by the record. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015); Robinson v. Peake, 21 Vet. App. 545, 552 (2008). 

i )An initial higher rating in excess of 30 percent, prior to February 5, 2019, for PTSD.

ii) A higher rating in excess of 70 percent, from February 5, 2019, for PTSD

Ratings are based on a schedule of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. 38 U.S.C. § 1155. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability.  38 C.F.R. § 4.1. 

VA evaluates PTSD under the General Rating Formula for Mental Disorders provided in 38 C.F.R. § 4.130, DC 9411. Under that DC: 

A 30 percent rating is assigned when symptoms such as depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, or mild memory loss (such as forgetting names, directions, or recent events), cause occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and normal conversation). Id. 

A 50 percent rating is assigned when symptoms such as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships cause occupational and social impairment with reduced reliability and productivity. Id.

A 70 percent rating is warranted where there is occupational and social impairment with deficiencies in most areas, including work, school, family relationships, judgment, thinking or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. Id.

A 100 percent is warranted where there is total occupational and social impairment due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

The list of symptoms under the rating criteria are meant to be examples of symptoms that would warrant the evaluation, but are not meant to be exhaustive, and the Board need not find all or even some of the symptoms to award a specific evaluation. Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). See also Vazquez-Claudio v. Shinseki, 713 F.3d 112, 117 (Fed. Cir. 2013) (explaining that the symptoms that could give rise to a given rating are those in like kind, i.e., of similar duration, severity, and frequency, to those provided in the non-exhaustive lists). 

Where there is a question as to which of two evaluations shall be applied the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant.  38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3. 

As an initial matter, the Board notes that the Veteran and his representative attorney appear to have limited the scope of this appeal to entitlement to a 70 percent disability rating prior to February 5, 2019, for the Veteran’s PTSD. Notwithstanding, the Board will further consider whether even a higher rating in excess of 70 percent, for the period from February 5, 2019 and forward, is warranted. See AB v. Brown, 6 Vet. App. 35, 39 (1993). 

As previously noted, by a September 2013 rating decision, the RO granted a 10 percent disability rating for the Veteran’s anxiety disorder effective October 24, 2012, the date following the Veteran’s separation from active duty. Thereafter, in an April 2014 rating decision, the RO recharacterized the Veteran’s disability as PTSD and anxiety disorder and his evaluation was increased from 10 percent to an initial 30 percent effective October 24, 2012. In a most recent July 2019 rating decision, the RO increased the Veteran’s PTSD from 30 percent to 70 percent effective February 5, 2019. These actions have created the staged rating to be addressed. 

Through his procedural appeal documents and statements, the Veteran contends that a 70 percent rating is warranted for his PTSD and associated symptoms for the period prior to February 5, 2019, as they have since caused him significant social and occupational impairment, resulting in difficulty in adapting to stressful circumstances, and inability to maintain effective relationships, recurrent and severe depression, poor concentration, recurrent and unprovoked irritability with anger outbursts, and inability to perform minimal personal hygiene. See February 2017 and January 2019 VA Forms 21-8940. 

As noted in the Introduction, the Board’s review is limited to the evidence of record at the time of the Veteran’s May 7, 2018, opt-in.  After engaging in a holistic analysis assessing the severity, frequency and duration of the signs and symptoms of the Veteran’s PTSD, recognizing that the symptoms listed in the rating criteria are non-exhaustive examples and when looking at the effects determining the impairment level, the Board finds that for the period prior to February 5, 2019, his PTSD has manifested more closely to occupational and social impairment, with deficiencies in most areas, such as work, family relations, judgement, thinking, and mood changes due to impaired impulse control such as unprovoked irritability with periods of anger outbursts, recurrent and severe depression, minimal personal hygiene, difficulty with concentration, difficulty in adapting to stressful circumstances, and difficulty and inability to establish and maintain effective work and social relationships; symptoms that when considered as a whole, approximate the criteria for a 70 percent rating, but not higher. For the period from February 5, 2019, his PTSD has continued to manifest by no worse than occupational and social impairment, with deficiencies in most areas, such as work, family relations, judgement, thinking, and mood changes due to impaired impulse control such as unprovoked irritability with periods of anger outbursts, recurrent and severe depression, minimal personal hygiene, difficulty with concentration, difficulty in adapting to stressful circumstances, and difficulty and inability to establish and maintain effective work and social relationships which again, is a level of impairment already contemplated by the assigned 70 percent rating. The next highest 100 percent level is not approximated since a total occupational and social impairment has not been shown at any time throughout the appeal period. See Vazquez-Claudio, 713 F.3d at 117; Bankhead v. Shulkin, 29 Vet. App. 10, 22 (2017); Mauerhan, 16 Vet. App. at 442. 

With respect to the period prior to February 5, 2019, private treatment records from Alternative Counseling Center, LLC, reflect that right after the Veteran’s discharge from active duty, he engaged in psychotherapy treatment. During an October 2012 session, the Veteran reported difficulty establishing and maintaining personal relationships and anger management issues. Thereafter the Veteran reported suicidal thoughts numerous times. He reported that shortly after he began working as a schoolteacher, he heard a loud sound in the school which he believed was an RPG (rocket-propelled grenade) that made him lock the classroom’s door. See October 31, 2012 progress notes. The Veteran reported that he felt alone in life (see November 7, 2012 notes); continued talking about suicidal ideation, continuous depression, that he had not done his dishes at home for a month and that he hates to wake up, to go to work and to go home (see November 29, 2012 notes); the he decided to take a medical leave from work as he was feeling ill (see January 23, 2013 notes); and reported episodes of anger outbursts; most recently at a shop for which he was charged with a misdemeanor and was handcuffed by the police in front of his children (see March 8, 2013 notes). 

The evidence of record shows that the Veteran was admitted to the VA’s Domiciliary Psychological Rehabilitation Program on October 3, 2013, where he remained for approximately 11 months until September 2014. See July 8, 2015 Statement of Treatment from Mountain Home VA Medical Center (VAMC). VA treatment records reflect that the Veteran was having chronic sleep disturbances as he was sleeping an average of 4 hours but “real broken” (see October 4, 2013 progress notes); that his other medical problems, such as cerebellar atrophy exacerbate his mental health (see October 7, 2013 progress notes); increased risk with his behavior, pressured speech, racing thoughts, severe mood swings, excessive spending, long periods without sleep and increased irritability and anger (see October 11, 2013 notes); that his mood is irritable and guarded (see October 24, 2013 progress notes); that the Veteran tends to act impulsively, experiences generalized discontent and feelings of inferiority, appears to be withdrawn, is psychologically inaccessible, and that he has been married twice and second marriage is in jeopardy as the Veteran has become emotionally and verbally abusive (see October 28, 2013 notes). A November 8, 2013 entry reflects that the Veteran continued having issues with his sleep, anxiety, depression and irritability. A December 5, 2013 progress notes reflects that although the Veteran’s mood was irritable, his affect was “appropriately rangeful” [sic], and congruent to stated mood. A December 17, 2013 progress note endorses the Veteran’s poor judgement as he booby-trapped the driveway of his house with tire spikes causing destruction to a meter reader vehicle and for which the Veteran was found liable. The Veteran also reported “keeping a filthy house and not washing his clothes or showering for extended periods of time. VA treatment records also reflect that the Veteran experiences avoidance behaviors, hypervigilance and overreactions to triggers (see December 23, 2013 notes); and a dramatic increase in his levels of irritability and anger as well as marked sleep disturbances since his return from overseas (see February 10, 2014 notes). 

From March 2014, the Veteran began showing some improvement. A March 26, 2014 entry noted that he has been using relaxation skills for coping which is helping his anxiety and falling to sleep at night. An April 8, and April 29, 2014 entries show that there has been some improvement and that there has not been evidence of severe depression, acute anxiety, and no suicidal or homicidal ideations. See also July 2014 notes (the Veteran denied recent mood swings, is participating with his son in Boy Scouts activities and is in better control of nightmares due to increased medication); and August 12, 2014 (doing quite a bit better, has engaged in family activities with his children, able to better self-control when triggered, but still dealing with avoidance). Nonetheless, by September 29, 2014, the VA provider noted a positive sign of depression, anxiety, nightmares and that the Veteran was “jumpy.” In November 2014, the Veteran’s attending psychologist indicated that the Veteran was experiencing severe and recurrent depression, irritability and suspiciousness of others, and hypervigilance associated with PTSD which is highly disruptive for the Veteran. The VA psychologist added that the mood dysfunction and PTSD symptoms exacerbate his personality dysfunction, which in turn result in problems with day to day management of issues. See November 26, 2014 Mental Status examination. See also April 29, 2015 notes (for approximately one month he has “hit a rough patch” as evidenced by sleeping all day, staying up when he should be resting, poor appetite, going days without showering); May 1, 2015 (he is more irritable and is particularly short with his children); May 10, 2015 notes (reports anger issues and would like to begin anger management treatment; flat affect and defeated appearance); May 18, 2015 (severe major depression); May 21, 2015 (another irritability and anger outburst incident with shop’s staff); July 29, 2015 (agitated toward VAMC staff); July 30, 2019 (requests follow up treatment due to worsening depression, anxiety and anger issues) August 8, 2015 PTSD screening (reports extreme difficulty concentrating, extreme feelings of irritability and anger outbursts, emotionally numb, distant and cut out); October 29, 2015 (the Veteran requests treatment to reduce hypervigilance and irritability); July 5, 2016 (endorses PTSD symptoms including increased nightmares, continued hypervigilance, worsened avoidance, unchanged flashbacks,” and irritability and anger issues); August 25, 2016 (the Veteran reported that his need for behavioral health treatment is critical after he “blew up with his kids,” grabbed his daughter by the hair and authorities were called to investigate the incident); November 27, 2016 (the Veteran engaged in a verbal altercation with his children’s grandmother in public, in front of his daughter’s school); April 4, 2017 (the Veteran expressed embarrassment as he continues accumulating large amounts of trash in his house given his depressed mood and spends most of his time in bed); and April 16, 2018 (feels that he has improved a bit but continues to experience anger and intermittent depression). 

The Veteran was afforded an initial VA PTSD examination in April 2014. The report reflects that the Veteran had occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. That level of impairment more nearly approximates the criteria required for a 30 percent rating. The VA examiner noted that although the Veteran’s non-service connected personality disorder causes the vast majority if his impairment socially and occupationally, his PTSD symptoms do add to his impairment. The VA examiner noted symptoms such as depressed mood, suspiciousness, difficulty in establishing and maintaining effective work and social relationships, feelings of detachment or estrangement from others, poor judgement, and exaggerated startle response that cause clinically significant distress or impairment in social, occupational, or other important areas of functioning. Nevertheless, the Veteran reported that while has been able to better control his violent behavior, he still experienced helpless feelings, passive aggressive destructive acts against objects, poor frustration tolerance and hypervigilance. The Veteran acknowledged suicidal thoughts; however, without plan or intent. 

The Veteran was afforded a subsequent VA PTSD examination in November 2015. The examination report reflects that the Veteran had occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. That level of impairment more nearly approximates the criteria required for a 70 percent rating. The Veteran reported he has no friends and that he does not participate in social activities, and the he is experiencing trouble keeping up with his hygiene. The VA examiner noted symptoms such as irritable behavior and angry outbursts, reckless or self-destructive behavior, hypervigilance, exaggerated startle response, problems with concentration, chronic sleep disturbances, depressed mood, anxiety, suspiciousness, near-continuous panic or depression affecting the ability to function independently, appropriately and effectively, flattened affect, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, including work or a work like setting, inability to establish and maintain effective relationships, suicidal ideation, and neglect of personal appearance and hygiene that cause clinically significant distress or impairment in social, occupational, or other important areas of functioning. These symptoms more nearly approximate the required criteria for a 70 percent rating. The examiner further noted that during the examination the Veteran was sad, anxious and tearful. 

The Veteran was then afforded a third VA PTSD examination in March 2017. This time the report reflects that the Veteran had occupational and social impairment due to mild and transient symptoms which decrease work efficiency and ability to perform occupational tasks. This level of characterization more nearly approximates the criteria required for a 10 percent rating. The examiner indicated that the PTSD screening assessments included in the Veteran’s VA treatment records cannot be viewed as a valid tool to ascertain the level of severity of the Veteran’s PTSD. The examiner further noted that the most recent medical evidence with respect to the Veteran’s mental health issues indicates that his issues and treatment has concentrated in social stressors, such as the Veteran’s recent incident with his daughter in which authorities were called to investigate, rather than due to his actual PTSD. The Veteran reported that his depression has worsened; however, the examiner indicated that there does not appear to be significant impairment due to the Veteran’s PTSD. The VA examiner, however, acknowledged symptoms such as depression, sleep disturbances, and irritable behavior and angry outbursts typically expressed as verbal or physical aggression toward people or objects. 

The Board notes that, although the April 2014 and March 2017 VA examiners characterized the Veteran’s symptoms as resulting in either occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, which warrants a 30 percent rating, or occupational and social impairment due to mild and transient symptoms which decrease work efficiency and ability to perform occupational tasks, which warrants a 10 percent rating, VA treatment records indicate a greater severity than that level. To that effect, the Board notes that the evidence regarding the Veteran’s poor coping skills, poor anger management suggesting explosive impulsivity and irritability, to include verbal altercations with family members and others, severe and recurrent depression and social isolation were not mentioned nor considered in the April 2014 and March 2017 reports. In fact, such symptoms were supported by the May 2015 VA examiner as his assessment revealed quite similar results to those noted by the Veteran’s attending mental health providers throughout the appeal period. 

After weighing all the evidence in regard to the severity level of the Veteran’s PTSD and anxiety disorder, the Board finds that prior to February 5, 2019, the evidence of record shows that his disability, which manifested through poor or impaired impulse control with irritable behavior and anger outbursts, difficulty in adapting to stressful circumstances, difficulty in establishing and maintaining effective work and social relationships, inability to establish effective relationships and recurrent and severe depression and, to some extent, neglect of personal appearance and hygiene, had a direct and significant impact on his occupational and social activities, resulting in deficiencies in his work and his personal relations prior to that date. While there appears to be a period of some improvement in March 2014 where the Veteran reported better coping skills, the Board notes that such improvement was temporary and not permanent in nature as the severity of his symptoms resumed shortly thereafter. 

Therefore, for the period prior to and after February 5, 2019, his disability picture due to PTSD and anxiety disorder and associated symptoms more closely approximates to the criteria for a 70 percent rating, which reflects deficiencies in most areas, such as the ones mentioned above. See 38 C.F.R. § 4.7. This is particularly so when reasonable doubt is resolved in the Veteran’s favor. See 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

Notwithstanding this increase in the rating, the Board finds that a 100 percent rating for PTSD after February 5, 2019 is not warranted. Comparing the Veteran’s reported and documented psychiatric symptoms to the rating schedule, the Veteran does not manifest or nearly manifest the criteria for a 100 percent disability rating due to his depressive disorder with anxiety and associated symptoms. The Veteran’s psychiatric disorder does not result in total occupational and social impairment. Notably, while the evidence reflects some neglect of personal hygiene per the Veteran’s report, the Veteran’s health assessments and examinations of record reflect that the he has been observed as reasonably groomed or dressed appropriately during his interviews. In addition, either prior February 5, 2019, or thereafter, there is no evidence of gross impairment in thought processes, grossly inappropriate behavior and the Veteran has consistently self-denied persistent delusions or hallucinations, or persistent danger to self or others. 

Accordingly, for the period prior to and after February 5, 2019, the criteria for a 70 percent rating, but no higher, have been met for his PTSD. 

With respect to the period from February 5, 2019, the preponderance of the evidence is against the claim and a higher rating in excess of 70 percent for his PTSD is not warranted. See 38 C.F.R. § 4.7 

TDIU and DEA 

The issue of entitlement to TDIU has been raised by the record; see Rice v. Shinseki, 22 Vet. App. 447 (2009); because the Veteran’s claim for an increased disability rating for an acquired psychiatric disorder is by definition a claim that his psychiatric symptoms prevents or substantially impairs his ability to secure and maintain employment. 38 C.F.R. § 4.130, General Rating Formula for Mental Disorders. The weight of the evidence indicates that the Veteran is entitled to TDIU.

TDIU is granted for claimants who are unable to secure and maintain substantially gainful employment due to their previously service-connected disabilities, but claimants must meet the schedular rating criteria for TDIU for the Board to make such a finding in the first instance. 38 C.F.R. § 4.16. The Veteran meets the schedular rating criteria, because, as of this decision, the Veteran has been assigned a disability rating that is at least 60 percent disabling. Id. As discussed below, the Veteran’s service-connected disabilities, notably his PTSD prevents him from securing and maintaining substantially gainful employment.

The Veteran has been granted service connection for the following disabilities: PTSD; migraines headaches; balance issues associated with cerebellar atrophy; right upper extremity radiculopathy, left upper extremity radiculopathy, right ankle arthritis; right shoulder impingement with tendinosis; degenerative disc disease (DDD) of the cervical spine; tinnitus, cerebellar atrophy; lumbosacral strain post vertebral fracture; right lower extremity radiculopathy; allergic rhinitis; erectile dysfunction; dermatitis; and, swallowing difficulties associated to cerebellar atrophy. 

In multiple VA Forms 21-8940 of record, Application for Increased Compensation Based on Unemployability, the Veteran has indicated, in pertinent part, that the effect of his PTSD with anxiety and all associated symptoms, migraine and tension headaches, his cerebellar atrophy and additional balance issues associated with it prevented him from securing or following any substantially gainful occupation. The noted that following his discharge from active duty he began working as a schoolteacher where he worked for one semester. The Veteran indicated that he was not able to remain seated ot stand for extended periods of time without having his cane or other objects to lean against, that the he remained isolated, was unable to complete tasks for his classes, and that he became worried he could potentially hurt someone as his work given his startle responses. The Veteran further noted that although he sought psychotherapy during that time, he remained extremely agitated and anxious at work. The Veteran indicated that the condition worsened to the extent that he had to see a doctor and was placed on medical leave of absence due to his PTSD and depression. He was placed on medication, returned to the school to report to the principal the situation and requested medical leave. He asserts he never returned to work and eventually resigned in December 2013, while un unpaid medical leave. 

Lastly, the Veteran pointed out that his cerebellar atrophy renders him unable to concentrate, stay focused, remember simple things. He noted that he has to check and recheck because he cannot remember or doubt himself having done something, like turning off the stove, lock the door, lock the car, etc. He also indicated that he speaks with a thick tongue which makes him embarrassed as his speech is extremely broken, which in turn would result in people thinking that he is drunk. Ultimately, the Veteran indicated that he forgets what he is talking about in the middle of sentences and that the combined effect of his disabilities makes it hard for him to perform an occupation. As for his education, the Veteran has indicated that he has four years of College and that he is a certified police officer and dispatcher. 

With respect to the Veteran’s PTSD and anxiety disorder, private treatment records from Alternative Counseling Center, LLC, reflect that in January 2013, the Veteran took a medical leave from work as he was feeling mentally ill. As previously noted, the evidence shows that the Veteran continued under unpaid medical leave from May 2013, until he officially resigned as a schoolteacher in December 2013. Meanwhile, the Veteran was admitted to the VA’s Domiciliary Psychological Rehabilitation Program on October 3, 2013, where he received intensive mental health care and where he remained for approximately 11 months until September 2014. 

While the Veteran was not afforded a VA examination connection with his PTSD until April 2014, as previously noted, VA treatment records reflect that the Veteran was experiencing chronic sleep disturbances, exacerbations associated to his cerebellar atrophy, increased risk with his behavior, pressured speech, racing thoughts, severe mood swings, excessive spending, increased irritability and anger that interfered with his mood and rendered him guarded, that he was acting impulsively and experienced generalized discontent and feelings of inferiority, withdrawal, was psychologically inaccessible, and that his marriage was in jeopardy as the Veteran became emotionally and verbally abusive, that his actions were exhibiting poor judgement, with severe and recurrent depression, avoidance behaviors, hypervigilance and overreactions to triggers, and a dramatic increase in his levels of irritability and anger. See VA treatment records dated from October 3, 2013 to February 10, 2014. A November 2014 Mental Health Evaluation conducted by the Veteran’s attending psychologist, revealed that his mood dysfunction and PTSD exacerbate his personality disfunction and interfere with the Veteran’s day to day management of issues. 

During an April 2014 VA PTSD examination, the VA examiner noted symptoms such as depressed mood, suspiciousness, difficulty in establishing and maintaining effective work and social relationships, feelings of detachment or estrangement from others, poor judgement, and exaggerated startle response that caused clinically significant distress or impairment in social, occupational, or other important areas of functioning. The Veteran reported helpless feelings, passive aggressive destructive acts against objects, poor frustration tolerance and hypervigilance. The Veteran acknowledged suicidal thoughts; however, without plan or intent. In sum, the VA examiner indicated that while the Veteran’s nonservice-connected personality disorder causes the vast majority of the Veteran’s problems and impairment socially and occupationally, his PTSD also contributed to it. 

During a subsequent May 2015 VA examination, the VA examiner indicated that the Veteran had occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. The Veteran reported no participation in social activities and the he was experiencing trouble keeping up with his hygiene. The examiner acknowledged symptoms such as irritable behavior and angry outbursts, reckless or self-destructive behavior, hypervigilance, exaggerated startle response, problems with concentration, chronic sleep disturbances, depressed mood, anxiety, suspiciousness, near-continuous panic or depression affecting the ability to function independently, appropriately and effectively, flattened affect, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, including work or a work like setting, inability to establish and maintain effective relationships, among others, that cause clinically significant distress or impairment in social, occupational, or other important areas of functioning. 

With respect to the Veteran’s cerebellar atrophy, during a November 30, 2013 VA consult the Veteran reported vestibular symptoms, migraine headaches, sensitivity to light, sensitivity to noise, back pain, fatigue, and loss of energy. In a January 2015 private treatment opinion from NE TN Associate Neurology, the Veteran’s private attending neurologist indicated that the Veteran’s balance was off and worsened with fatigue for which the Veteran requires a cane to ambulate. The private provider also noted symptoms such as chronic headaches, fatigue, lack of energy, cognitive and mental fatigue, anxiety, and nightmares. The health provider also noted that the Veteran has central vestibular dysfunction as shown by a 2010 CA Scan. 

The Veteran was afforded a VA Central Nervous System examination in connection in October 2017. The VA examiner indicated that the Veteran’s cerebellar ataxia limits his functional balance by severely limiting his standing waking and climbing. 

With respect to the Veteran’s service-connected DDD of the cervical spine, post fracture lumbosacral strain, and dermatitis, the Veteran was afforded VA examination in March 2017 respectively. However, the VA examiners determined that these disabilities do not impact the Veteran’s functional capacity. 

Ultimately, the Board notes that the Veteran has been in receipt of Disability Insurance benefits from the Social Security Administration (SSA) since June 2013. SSA records list the Veteran’s psychiatric disorders and his cervical and lumbar spine discogenic and degenerative disorders as the main contributors for the Veteran unemployability. In assessing the Veteran’s psychiatric disorders, a January 2015 SSA Decision noted that the Veteran has moderate difficulty understanding, following and making decisions on complex instructions in a consistent manner, has a moderate limitation of social interaction and has a moderate-to-extreme limitation of adaptation skills. The report also indicated that he has moderate difficulty interacting with the public and supervisors and extreme difficulty adapting to change and dealing with additional stress. An SSA psychological assessment conducted by a clinical psychologist revealed that the Veteran cannot “complete a normal workday/workweek without interruptions from psychological based symptoms or perform [in a] consistent pace without an unreasonable number and length of rest periods.” 

The Board finds the VA treatment records pertaining to the period in question, the SSA evidence received in October 2017, and the May 2015 PTSD VA examination, along with the October 2017 Central Nervous System VA examinations persuasive and sufficient as to the negative effect of the Veteran’s service connected disabilities over his functional capacity. 

As the evidence of record supports the Veteran’s eligibility for a TDIU on a schedular basis, the Board finds that his service connected disabilities, particularly his PTSD and anxiety disorder and the balance problems, central vestibular dysfunction, and migraine headaches associated with his cerebellar atrophy, have precluded him from securing or following substantially gainful employment. Thus, a TDIU is warranted. TDIU having been found, the criteria for entitlement to DEA benefits have also been met. 38 C.F.R. § 3.807 (a)(2).

 

 

Carole R. Kammel

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board William Pagan, Associate Counsel 

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.