Citation Nr: AXXXXXXXX
Decision Date: 06/30/21 Archive Date: 06/30/21

DOCKET NO. 190627-90915
DATE: June 30, 2021

ORDER

Entitlement to an effective date of December 22, 1992, but no earlier, for the award of service connection for endometriosis is granted.

Basic eligibility to Dependents' Educational Assistance (DEA) benefits under Chapter 35, Title 38, of the United States Code is established from at least March 1, 2010.

FINDINGS OF FACT

1. The most probative evidence reflects that entitlement to service connection for endometriosis arose during the Veteran's active duty.

2. Resolving all reasonable doubt in the Veteran's favor, her initial claim to establish service connection for endometriosis was received by the Department of Veterans Affairs (VA) within her initial post-service year.

3. The most probative evidence reflects that the Veteran's service-connected endometriosis was manifested by lesions involving the bowel or bladder confirmed by laparoscopy, pelvic pain, or heavy or irregular bleeding not controlled by treatment, and bowel or bladder symptoms since December 22, 1992. 

4. By virtue of the Board's allowance of TDIU from March 1, 2010, the Veteran, who was discharged from service under conditions other than dishonorable, has a total disability evaluation, permanent in nature, as a result of a service-connected disability since that date.

CONCLUSIONS OF LAW

1. The criteria for the assignment of an effective date of December 22, 1992, but no earlier, for the award of service connection for endometriosis have been met. 38 U.S.C. §§ 5110, 5103A, 5304 (c); 38 C.F.R. § 3.159, 3.400, 3.501, 3.654, 3.700.

2. The criteria for a 50 percent initial evaluation for service-connected endometriosis are met from December 22, 1992, to August 18, 2012. 38 U.S.C. § 110, 1155, 5103, 5103A, 5107; 5110(a); 38 C.F.R. §§ 3.102, 3.159, 3.951, 4.1, 4.2, 4.3, 4.7, 4.116 Diagnostic Code 7629.

3. From March 1, 2010, to March 18, 2015, the criteria to establish basic eligibility to DEA benefits under Chapter 35, Title 38, of the United States Code have been met. 38 U.S.C. §§ 1155, 3500, 3501, 5110; 38 C.F.R. §§ 3.1, 3.151, 3.340.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Air Force from June 1992 to December 1992. 

The Veteran initiated an appeal of this issues subject to this decision, among others, under the Department of Veterans Affairs' (VA's) "legacy" appeal system. In August 23, 2017, the former President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA's decision on their claim to seek review.

The Agency of Original Jurisdiction (AOJ) concurrently issued a Statement of the Case (SOC) and rating decision in March 2019, with the former continuing to deny two appealed issues and the latter partially granting two separate appealed issues. In June 2019, the Veteran simultaneously submitted a VA Form 9 and VA form 10182. As VA laws provide for separate appeal periods for "legacy" and AMA appeals dependent on the form of AOJ adjudication (a rating decision as opposed to an SOC), the Veteran's VA Form 9 was effective in perfecting a "legacy" appeal to the Board for the issues addressed in the March 2019 SOC, and the VA Form 10182 effectively appealed the issues adjudicated in the March 2019 rating decision to the Board under the AMA. 

In light of the above facts, the Veteran has a separate appeal which she has requested Board readjudication under VA's "legacy" appeal system. As applicable laws do not permit the Board to readjudicate "legacy" appeals and AMA appeals under the same cover, the Veteran's "legacy" appeal will be addressed in a concurrently issued decision. 

In April 2021, the Veteran presented oral testimony in support of her appeal at a board hearing that was conducted by the undersigned Veterans Law Judge (VLJ) via videoconferencing equipment. A transcript of this hearing is of record. 

Clarification of the issues on appeal

The issues on appeal were initially adjudicated by the AOJ in rating decisions dated in January 2014, March 2015, and May 2015; however, within the appeal period of each of these rating decisions, the Veteran submitted new and material evidence concerning the initial evaluations and effective dates of these awards. As such, the AOJ properly readjudicated the downstream elements (effective dates and initial evaluations) of the Veteran's service-connected endometriosis and migraine headaches associated with chronic pain syndrome in the August 2016 rating decision, from which the current appeal stems. 38 C.F.R. § 3.156(b); Bond v. Shinseki, 659 F.3d 1362 (Fed. Cir. 2011). Further, as the Veteran's formal TDIU claim was filed during the pendency of the Veteran's appealed issues seeking increased initial evaluations, the former is properly before the Board as part and parcel of the latter. Rice v. Shinseki, 22 Vet. App. 447, 452 (2009). 

In sum, the appeal periods for the Veteran's appealed issues seeking entitlement to earlier effective dates for DEA benefits, a TDIU, and 50 percent initial evaluations for her service-connected endometriosis and migraine headaches with associated chronic pain syndrome are heavily tied to the dispositions of her appealed issues seeking earlier effective dates for the awards of service connection for these disabilities. As explained more fully below, due to the unique circumstances posed by the Veteran's appeal, the Board's "legacy" and AMA decisions must refer to dispositions in the other as to avoid confusion in implementing such. 

Further, in several filings throughout the pendency of the appeal and in her testimony at the April 2021 Board hearing, the Veteran has made clear that she is seeking to establish "permanent" initial evaluations for her service-connected endometriosis and migraine headaches with associated chronic pain syndrome because of the fact that her ill health makes re-examination for assessment of these disabilities difficult. The Board observes that "permanency" of a VA evaluation may be established in several different ways, to include if such a rating is "protected" by law and/or downstream from an award of a TDIU and assignment of DEA benefits under Chapter 35, Title 38, of the United States Code. 

To the above point, the AOJ has characterized this appealed issue as seeking DEA benefits prior to March 19, 2015, and such is properly before the Board and will be addressed herein. Nonetheless, the Board's actions in the "legacy" decision will positively impact the Veteran's appeal seeking the permanency of her evaluations. To this extent, the Veteran's appealed issues under VA's "legacy" appeal system and under the AMA are heavily intertwined, and the Board will be referring to the accompanying decision in an effort for clarity. Accordingly, the Board has recharacterized the issues on appeal in this decision and the accompanying "legacy" decision to more accurately reflect the benefits sought by, and available to, the Veteran. 

Finally, as will be discussed below, the Board concludes that an effective date of December 22, 1992, is warranted for the award of service connection for endometriosis, and the evidence shows that the Veteran's symptoms meet the criteria for a 50 percent initial evaluation from that date until August 18, 2012; however, the Board is unable to assign such an initial evaluation in the first instance. Grantham v. Brown, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997).

1. Entitlement to an effective date earlier than August 18, 2012, for the award of service connection for endometriosis is granted.

The statutory guidelines for the determination of an effective date of an award are set forth in 38 U.S.C. § 5110. Except as otherwise provided, the effective date of an evaluation and award of compensation based on an original claim, a claim reopened after a final disallowance, or a claim for increase will be the date of receipt of the claim, or the date entitlement arose, whichever is the latter. 38 C.F.R. § 3.400.

Under 38 C.F.R. § 3.400(b)(2)(i), the effective date for a grant of direct service connection will be the day following separation from active service or the date entitlement arose if the claim is received within one year after separation from service. Under 38 C.F.R. § 3.400(b)(2)(ii), the effective date for presumptive service connection will be the date entitlement arose if a claim is received within one year after separation from active service. Otherwise, the effective date will be the date of receipt of the claim, or the date entitlement arose, whichever is later.

VA amended its adjudication regulations on March 24, 2015, to require that all claims governed by VA's adjudication regulations be filed on standard forms prescribed by the Secretary, regardless of the type of claim or posture in which the claim arises. 79 Fed. Reg. 57660 (Sept. 25, 2014). The amendments, however, are only effective for claims and appeals filed on or after March 24, 2015. As the issues in this case was filed prior to that date, the amendments are not applicable in this instance and the regulations in effect prior to March 24, 2015, will be applied.

Under the old regulations, any communication or action, indicating an intent to apply for one or more benefits under laws administered by VA, from a claimant or the claimant's representative, may be considered an informal claim. Such informal claim must identify the benefit sought. Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution. If received within one year from the date it was sent to the claimant, it will be considered filed as of the date of receipt of the informal claim. 38 C.F.R. § 3.155(a) (in effect prior to March 24, 2015).

There is no set form that an informal written claim must take. All that is required is that the communication indicates an intent to apply for one or more benefits under the laws administered by VA, and identify the benefits sought. Rodriguez v. West, 189 F.3d 1351 (1999). Case law is clear that this means the claimant must describe the nature of the disability for which he is seeking benefits, such as by describing a body part or symptom of the disability. Brokowski v. Shinseki, 23 Vet. App. 79, 86-87 (2009).

A report of VA examination or hospitalization can be accepted as an informal claim for benefits. 38 C.F.R. § 3.157(b)(1) (in effect prior to March 24, 2015). The provisions of this regulation apply only when such reports relate to examination or treatment of a disability for which service connection has previously been established, or when a formal claim for compensation has been disallowed for the reason that the service-connected disability is not compensable in degree. 

The law precludes receipt of VA compensation while on active duty. See 38 U.S.C. § 5304 (c); 38 C.F.R. §§ 3.501, 3.654, 3.700 (providing that VA compensation will be discontinued for any period for which the veteran received active service pay). 

Endometriosis is evaluated under the criteria of 4.116 Diagnostic Code 7629, which provides s maximum schedular 50 percent disability evaluation is assigned where the evidence shows that the endometriosis has resulted in lesions involving the bowel or bladder confirmed by laparoscopy, pelvic pain or heavy or irregular bleeding that is not controlled by treatment, and bowel or bladder symptoms.

Analysis

The Veteran asserts that she initially filed a claim to establish service connection for residuals of endometriosis during her initial post-service year, and the frequency, severity, and duration of the symptoms associated with this disability have been consistent since that time. In sum, the Veteran's appeal is seeking an earlier effective date for the date of service connection for endometriosis and the assignment of a 50 percent initial evaluation for such for any period prior to August 19, 2012, for which service connection is deemed to be warranted. 

As noted above, this issue includes entitlement to an effective date earlier that August 19, 2012, for the award of service connection for endometriosis, and if that award is granted partially or in total, the propriety of the assignment of a 50 percent initial evaluation for any earlier period for which service connection is deemed warranted. As such, the threshold question to address concerns the appropriate effective date for the award of service connection for this disability, which entails an analysis of the evidence pertinent to the date of the Veteran's initial claim seeking these benefits and the date that entitlement arose. 

The facts pertinent to the Veteran's appeal are largely undisputed. The Veteran administratively joined the Air Force in July 1991; however, she did not enter active duty until June 1992 due to her participation in the delayed-entry program. Notably, her July 1991 entrance examination report is devoid of an any notation of prior or ongoing gynecological disabilities. Shortly after entering active duty in June 1992, the Veteran began to experience severe abdominal pain. Although her service treatment records reflect extensive reports of these symptoms and diagnostic consultations to determine the cause of such, endometriosis was not diagnosed during the Veteran's active duty.

Unfortunately, the Veteran's significant symptoms were debilitating, impacting her ability to complete her duties and assignments of active duty. Specifically, the Veteran's service personnel records reflect that she received counselling and admonishments from superiors on several occasions for missing work assignments due to medical appointments or, when present, being unable to complete her work assignments due to extreme abdominal pain. 

The Veteran's inability to function due to her abdominal pain caused conflict and strife among her superiors and fellow service members, which was noted to be the one of the chief reasons for the Veteran's November 1992 request for a voluntary discharge from the Air Force. In light of this request, a Physical Evaluation Board was convened, which included a mental health evaluation detailing the Veteran's emotional difficulties stemming from her pain and difficulties interacting with others due to conflict arising from her inability to perform her duties. 

Curiously, although the Veteran had requested a voluntary discharge from the Air Force for the convenience of the government due to the above factors, the Physical Evaluation Board and her superiors recommended that she be involuntarily discharged from the Air Force due to the "character and behavior disorders" noted during the mental health evaluation. The recommendation was implemented in December 1992, the Veteran's DD Form 214 reflects the above as the reason for the Veteran's separation from the Air Force, and her discharge was characterized as honorable. The file reflects that the Veteran contacted several politicians' offices throughout the 1990s in an attempt to get her reason for discharge from the Air Force changed; however, these efforts were not fruitful, and none of these written correspondences were sent or forwarded to the AOJ by any party involved. 

In August 2013, the Veteran filed a formal claim seeking to establish service connection for "endometriosis and its residuals." Pertinently, item 5 of this form regarding whether the Veteran had previously filed a claim for VA disability benefits was left blank. This claim was denied by the AOJ in a January 2014 rating decision; however, within the appeal period of such, the Veteran submitted substantial private medical evidence showing that her in-service abdominal pain was an initial manifestation of endometriosis, although the diagnosis was not confirmed until completion of a laparoscopy in February 1994. 

Based on the above evidence, the AOJ readjudicated the Veteran's claim, establishing service connection for endometriosis; a 50 percent initial evaluation was assigned, effective from August 19, 2013 the date that the AOJ received the Veteran's formal claim. 

Later that month, the Veteran filed formal claims to establish service connection for migraine headaches as secondary to endometriosis and a TDIU. In connection with these claims, the Veteran also submitted private medical evidence concerning the date of initial onset of her endometriosis and the severity of the symptoms associated with this disability. In a May 2015 rating decision, the AOJ continued the 50 percent evaluation assigned for the Veteran's service-connected endometriosis, established service connection for migraine headaches with associated chronic pain syndrome, rated 50 percent disabling, and granted a TDIU, with both awards made effective from March 19, 2015. The Veteran expressed timely disagreement with the effective dates assigned for all awards, noting that the 50 percent initial evaluations for endometriosis and migraine headaches should be assigned from the day after her separation from active duty. The present appeal ensued. 

In the March 2019 rating decision, the AOJ partially granted the Veteran's appeal seeking an earlier effective date for this disability. Specifically, service connection was deemed warranted from one year prior to VA's receipt of the Veteran's formal claim (August 19, 2012), under Section 506 of Public Law 112-154. Also, the AOJ established basic eligibility to Dependents' Educational Assistance (DEA) benefits under Chapter 35, Title 38, of the United States Code is established from March 19, 2015, based on the TDIU allowance from four years earlier. 

The Veteran claims that she initially filed a claim to establish service connection for endometriosis and all residuals during her initial post-service year. Specifically, she contends that she sought VA treatment for her continued abdominal pain from the VA medical facility in Perry Point, Maryland, shortly after her December 1992 service separation, and that she filed a claim to establish service connection for endometriosis and all residuals at that time. The Veteran's file is devoid of any VA treatment records from that facility dated in 1993 and/or any claim for benefits that may have been filed at that time; however, there is evidence in the file that bolsters the Veteran's contentions. 

Pertinent to the above point, the Veteran's former husband submitted a statement conveying that he accompanied her to the medical appointment in Perry Point, Maryland, soon after her discharge from the Air Force, and that she completed paperwork for the filing of a claim for VA benefits at that time. Further, the Veteran's VA file contains a computer printout from the Beneficiary Identification Records Locator Subsystem (BIRLS) reflecting the Veteran's paper claims file (which has since been converted to electronic form) was created on January 12, 1993 within the Veteran's initial post-service year. Additionally, in support of her appeal, the Veteran submitted a copy of a letter sent to her by the AOJ in August 3, 1993, reflecting "We have received your application for benefits. You do not have to take any more action now." 

The Board observes that the statement submitted by the Veteran's former spouse corroborates her assertions of seeking VA treatment for the claimed disabilities and possibly filing a claim for VA benefits in connection with such during her initial post-service year. However, the Board finds that the BIRLS printout reflecting that the VA claims file was created in January 1993 and the August 1993 letter from the AOJ documenting receipt of the Veteran's "application for benefits" more compelling, as the AOJ's internal guidance provides that these two steps are among those to be taken when a Veteran not previously within VA's system files a claim for VA benefits. 

Armed with the above facts, the Board concludes that the most probative evidence reflects that the Veteran filed a claim for VA disability benefits within her initial post-service year. Unfortunately, this initial claim is not associated with the Veteran's current VA file, so it is unknown whether the Veteran sought to establish service connection for the disabilities subject to the present appeal, which is necessary under the controlling laws. 

Where, as here, records cannot be located through no fault of the Veteran, VA has a "heightened" obligation to more fully discuss the reasons and bases for its decision and to carefully consider applying the benefit-of-the-doubt doctrine. See, e.g., O'Hare v. Derwinski, 1 Vet. App. 365 (1991). The Board notes that the private medical evidence submitted by the Veteran clearly shows that her service-connected endometriosis caused significant functional limitation during and since her initial post-service year. Given these facts, the Board will confer the benefit of the doubt in the Veteran's favor to conclude that her claim, which was filed during her initial post-service year, was filed with the purpose of establishing service connection for endometriosis and its residuals. 

Having determined that the Veteran's initial claim seeking service connection for this disability was received by VA within her initial post-service year, the Board's analysis turns to the date that entitlement to service connection for endometriosis arose. Crucially, given that the Veteran's initial claim remained open and pending since 1993, the record may consider the totality of the evidence in determining this point. As noted elsewhere in this decision, the private medical evidence submitted by the Veteran clearly shows the clinicians' retrospective opinions that this disability initially manifested during her active duty, although such was not formally diagnosed until after separation upon completion of a laparoscopy in February 1994. 

As such, the date of the AOJ's receipt of the Veteran's initial claim is clearly the latter of these two dates for consideration. Further, since the claim was received by VA within her initial post-service year, the effective date of the award should be set for the day after the Veteran's separation from service. Accordingly, an effective date of December 22, 1992, for the award of service connection for endometriosis is warranted. This represents a full grant of the benefits sought with regard to the assignment of an earlier effective date for the award of service connection for this disability.

Having determined that service connection for endometriosis is warranted from December 22, 1992, the Board observes that the Veteran seeks the assignment of a 50 percent initial evaluation from that date until August 18, 2012 the day prior to the effective date of this award as assigned by the AOJ. As noted above, Diagnostic Code 7629 provides for a 50 percent evaluation for endometriosis manifested by lesions involving the bowel or bladder confirmed by laparoscopy, pelvic pain or heavy or irregular bleeding not controlled by treatment, and bowel or bladder symptoms. 

The Veteran's service treatment records and post-service private treatment records are replete with the Veteran's competent, credible, and consistent reports of extreme abdominal pain, among other symptoms, due to her service-connected endometriosis during active duty and throughout the appeal period for consideration. While these symptoms clearly meet the criteria for a 50 percent initial evaluation for endometriosis for the entirety of the period for consideration (December 22, 1992, to August 18, 2012), the Board is unable to assign such in the first instance. Grantham v. Brown, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997).

As noted in the Introduction, the Veteran has expressed concern about VA's ability to subsequently reduce the evaluation assigned for this disability due to her inability to present for a future VA examination scheduled for assessment purposes. To this point, controlling VA laws provide that evaluations in effect for 20 years or more are "protected" from such actions. 38 C.F.R. § 3.951. For the purpose of determining how long an evaluation has been in effect, the Court has made it clear that the Veteran need not been in actual receipt of the monetary award for 20 years only that the award is considered to have been in effect for 20 years. Salgado v. Brown, 4 Vet. App. 316 (1993). Thus, any initial evaluation assigned by the AOJ in the first instance will be considered to have been in effect from December 22, 1992, to the present a period of greater than 20 years. As such, the Veteran's initial evaluation for this disability will be protected by these legal provisions unless it is shown to have been procured by fraud. There is no such showing in this case.

2. Entitlement to basic eligibility to DEA benefits under Chapter 35, Title 38, of the United States Code prior to March 19, 2015.

As alluded to in the Introduction, the AOJ's characterization of this appealed issue has caused the Veteran some confusion and concern. Particularly, at the April 2021 Board hearing, the Veteran asserted that she never filed a claim seeking such benefits, and thus, when she received notice that such a claim had been filed (and subsequently denied), she assumed that another party may be fraudulently filing claims with VA on her behalf. The Board acknowledges and sympathizes with the Veteran's concerns; however, there is a reasonable explanation for the AOJ's actions and no indication of any fraudulent activity surrounding this matter. 

In a statement accompanying evidence regarding the assigned effective dates and initial evaluations for her service-connected endometriosis and migraine headaches, the Veteran requested permanent and total status of her initial evaluations due to her inability to report for future VA examinations for assessment of these disabilities due to ill health. To this point, "permanency" of a VA evaluation may be established in several different ways, to include downstream from an award of a TDIU and assignment of DEA benefits under Chapter 35, Title 38, of the United States Code and/or if such a rating is "protected" by law. 

Based on the AOJ's verbiage and the assigned effective date for this award in the March 2019 rating decision, it appears that the allowance of DEA benefits was downstream from the award of a TDIU from March 29, 2015. However, noting that the AOJ granted TDIU from that date in the May 2015 rating decision, it is unclear why this same reasoning was not employed in the April 2018 rating decision that denied entitlement to DEA benefits. Notwithstanding this incongruity, it is clear that this appealed issue stems from the AOJ's interpretation of the Veteran's March 2016 request for "permanency" of her 50 initial percent evaluations for her service-connected endometriosis and migraine headaches with associated chronic pain syndrome. 

Following a close reading of the Veteran's contentions and hearing testimony regarding her desire to achieve "permanency" of the 50 percent initial evaluations for her service-connected disabilities, it appears that the benefits sought by the Veteran may have been granted in this decision and the accompanying "legacy" decision. To this point, the Board has specifically stated that these initial evaluations are protected by these legal provisions unless procured by fraud, of which there is no showing. 

In sum, although the benefits initially sought by the Veteran have been granted in full, the Veteran's appealed issue, as characterized by the AOJ is not abrogated. Accordingly, the Board must readjudicate whether entitlement to DEA benefits prior to March 19, 2015, is warranted. In this regard, basic eligibility for Chapter 35 benefits for the child or surviving spouse of a veteran may be established if: (1) the veteran was discharged from service under conditions other than dishonorable, or died in service; and (2) the veteran has a permanent total service-connected disability; or (3) a permanent total service-connected disability was in existence at the date of the veteran's death; or (4) the veteran died as a result of a service-connected disability. 38 U.S.C. §§ 3500, 3501, 3510; 38 C.F.R. § 3.807.

In this case, the Veteran is still living. Therefore, the only legal basis for establishing basic eligibility for DEA benefits is his having a permanent and total service-connected disability. To this point, in the accompanying "legacy" decision, the Board determined that entitlement to a TDIU is warranted from at least March 1, 2010, and the remaining period of such entitlement (from December 22, 1992, to February 28, 2010) was remanded for additional development. 

In light of above, entitlement to basic eligibility to DEA benefits under Chapter 35, Title 38, of the United States Code is established from at least March 1, 2010. Further entitlement to this benefit cannot be determined at this time due to the intertwined nature of that matter with the Veteran's "legacy" appeal seeking entitlement to a TDIU prior to March 1, 2010. Noting that a Veteran may not pursue the same benefit simultaneously under VA's legacy system and the AMA, the Board observes that the matter of entitlement to DEA benefits prior to March 1, 2010, is essentially part and parcel of the "legacy" appeal seeking a TDIU prior to the same date. 

With the above in mind, the Board need not address further entitlement to DEA benefits prior to March 1, 2010, herein. However, the Board wishes to make it clear that nothing in this decision stands for the premise that DEA benefits prior to March 1, 2010, have been, or are being, denied by the Board; rather, this issue will be readjudicated by the AOJ as part and parcel of the appealed "legacy" issue seeking a TDIU prior to March 1, 2010. 

 

 

Michael J. Skaltsounis

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board Scott W. Dale, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.