# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 06-1445

STERLING T. RICE, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 18, 2008                                    Decided May 6, 2009)

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Brian P. Tierney,* with whom *Paul J. Hutter,* General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Brian B. Rippel*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, MOORMAN, and DAVIS, *Judges*.

PER CURIAM: On April 24, 2008, U.S. Army veteran Sterling T. Rice filed a motion for reconsideration or, in the alternative, panel review of an April 9, 2008, single-judge memorandum decision that dismissed his appeal for lack of jurisdiction. On July 22, 2008, his motion for reconsideration was granted by the single judge, and the matter was referred to this panel. The Court will withdraw the April 9, 2008, memorandum decision and issue this decision in its stead.

Mr. Rice appeals a January 27, 2006, Board of Veterans' Appeals (Board) decision that denied him an effective date earlier than November 1, 2000, for a total disability rating based on individual unemployability (TDIU) and remanded his appeal of the initial disability rating assigned for service-connected post-traumatic stress disorder (PTSD). The Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a) to review the January 2006 Board decision. The Court holds that a request for TDIU is best understood as part of an initial claim for VA disability compensation based on the individual effect of the veteran's underlying disability or disabilities or as a particular

type of claim for increased compensation. This is not to say that a claimant cannot submit a request for TDIU at any time, whether on a VA Form 21-8940 or in any other manner. Submission of a request for TDIU does not change the essential character of an assertion of entitlement to TDIU as a part of either an initial claim or a claim for increase. In this case, we hold that entitlement to TDIU is properly considered as part of the determination of the appropriate initial disability rating assigned for PTSD. For the reasons that follow, the Court will vacate the Board's January 27, 2006, decision denying entitlement to an effective date earlier than November 1, 2000, for TDIU and will remand the matter for readjudication consistent with this opinion.

## I. BACKGROUND

Mr. Rice served honorably in the U.S. Army from August 21, 1967, to August 20, 1973, including a tour in Vietnam from October 5, 1968, to April 12, 1970. On December 23, 1998, Mr. Rice filed an application for compensation or pension for PTSD. The St. Louis, Missouri, VA regional office (RO) denied the claim on July 16, 1999, finding no service connection because of a lack of a verifiable stressor. Within one year of that decision, Mr. Rice filed a Notice of Disagreement (NOD). Thereafter, Mr. Rice obtained counsel, who submitted additional argument on October 23, 2000, in support of a finding of service connection. On January 27, 2001, the RO granted Mr. Rice service connection for PTSD effective December 23, 1998 (the date he filed his claim), and assigned a 30% disability rating.

On March 27, 2001, Mr. Rice filed a VA Form 21-8940, entitled "veteran's application for increased compensation based on unemployability." Record (R.) at 328. On June 19, 2001, Mr. Rice submitted two documents through counsel to the RO. The first document was a letter bearing the subject line "ISSUE: Entitlement to a total rating based upon individual employability." R. at 379. The letter indicated that another VA Form 21-8940 was enclosed and requested entitlement to TDIU with an effective date of December 23, 1998. The letter also stated: "Mr. Rice asks that his claim for TDIU be adjudicated under 38 C.F.R. §§ 3.340(a) and 4.16(b)."[1,2] *Id.* The second document was

---

[1] Section 3.340(a) provides:

Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful

2

another letter, bearing the subject line: "ISSUE: I. NOTICE OF DISAGREEMENT, with the initial rating assigned in the rating[] decision of January 27, 2001[,] which granted service connection for post traumatic stress disorder and assigned a 30% rating from December 23, 1998. Request for Decision Review Hearing." R. at 384. The letter stated in part that Mr. Rice disagreed with the initial disability rating assigned for PTSD and requested "a higher initial rating, specifically a total rating, to include consideration of TDIU." *Id.* In the NOD, Mr. Rice stated that he had, "under separate cover[,] submitted a Formal Claim for TDIU." *Id.* He requested that a decision review officer review of his claim de novo.

On May 30, 2002, the RO increased Mr. Rice's PTSD rating from 30% to 70%, effective December 23, 1998. The RO also granted TDIU, effective November 1, 2000. The effective date for TDIU was assigned based on the RO's determination that entitlement arose "the day after full-time employment ceased as shown on the veteran's application for unemployability and in the [S]ocial [S]ecurity disability decision." R. at 669.

On April 2, 2003, Mr. Rice filed an NOD with the May 30, 2002, RO decision. Specifically, he sought an earlier effective date for TDIU. Mr. Rice also observed that the May 2002 RO decision did not grant the full benefits sought–i.e., it did not grant a total disability rating from December 23, 1998–and therefore he was entitled to a Statement of the Case (SOC) regarding his disagreement with the original 30% schedular rating in order to perfect an appeal to the Board. On April 21, 2004, acting on the April 2, 2003, NOD, the RO issued an SOC that denied an earlier effective date for

occupation. Total disability may or may not be permanent. Total ratings will not be assigned, generally, for temporary exacerbations or acute infectious diseases except where specifically prescribed by the schedule.

38 C.F.R. § 3.340(a) (2008).

[2] Section 4.16(b) provides, in pertinent part:

[A]ll veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Therefore, rating boards should submit to the Director, Compensation and Pension Service, for extra-schedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in paragraph (a) of this section.

38 C.F.R. § 4.16(b) (2008).

TDIU.

On September 15, 2004, Mr. Rice perfected his appeal to the Board. He presented the Board with two issues: (1) Entitlement to a higher initial disability rating for his service-connected PTSD and (2) entitlement to an earlier effective date for TDIU. In its January 27, 2006, decision, the Board, treating Mr. Rice's assertion of entitlement to TDIU as a new claim for an increased disability rating, denied an earlier effective date for the award of TDIU. The Board also remanded Mr. Rice's PTSD claim for compliance with statutory notice requirements and also for issuance of an SOC. Mr. Rice appealed the denial of an earlier effective date for TDIU to this Court.

On appeal, Mr. Rice argued that the Board erred by considering the effective date issue for his TDIU claim prior to completing the development and adjudication of his claim for a higher initial rating for PTSD. He asserted that the matters were inextricably intertwined because if he were granted a 100% schedular disability rating for PTSD as a result of the Board's remand of that matter, that action would moot his appeal of the effective date for TDIU. He also contended that the submission of evidence regarding unemployability within one year of the RO's initial grant of service connection for PTSD should have been associated with that claim and should not have been read as a new claim for TDIU.

On April 9, 2008, the Court issued a single-judge decision concluding that the two matters were inextricably intertwined. The Court then determined that under *Harris v. Derwinski*, 1 Vet.App. 180 (1991), it did not have jurisdiction to entertain the appeal of the effective date assigned for TDIU and dismissed the appeal without prejudice.

On April 24, 2008, Mr. Rice filed a motion for reconsideration of that decision, or, in the alternative, for panel review. Mr. Rice argued that the Court had jurisdiction of the TDIU matter, that the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) had impliedly overruled *Harris*, and that the appropriate remedy was vacatur and remand of the Board's decision. On July 22, 2008, the single judge granted reconsideration and referred the matter to a panel. On November 18, 2008, the Court heard oral argument in this matter.

## II. ANALYSIS

### A. Proper Treatment of an Assertion of Entitlement to TDIU

Mr. Rice argues that his request for TDIU should be considered part of the determination of the appropriate disability rating in the adjudication of his claim for disability compensation for PTSD, rather than as a freestanding claim for a separate benefit. In this case, he is correct; there is no freestanding claim for TDIU.

This case requires the Court to clarify what constitutes a claim. VA defines "claim" as "a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement, to a benefit"–in Mr. Rice's case, the benefit sought is a total disability rating based on unemployability. 38 C.F.R. § 3.1(p) (2008). The term "claim," however, has been used to describe a wide variety of circumstances in our jurisprudence: We have termed "claims" some matters better thought of as issues *within* a claim. We have frequently addressed particular claimed disabilities within a single application for benefits by referring to each asserted disability as a separate "claim," while also referring to the application for benefits as a whole as the veteran's "claim." We have used the word "claim" in a way that focuses more on the procedural posture of a claim, e.g., an "original claim for benefits," *Acciola v. Peake*, 22 Vet.App. 320, 326 (2008) ("[i]n the context of original claims for benefits"); a "claim reopened after final adjudication," *Goodwin v. Peake*, 22 Vet.App. 128, 138 (2008) ("[t]he effective date of an award based on . . . a claim reopened after final adjudication"); a "claim to reopen," *Vigil v. Peake*, 22 Vet.App. 63, 65 (2008) ("[Section] 3.1056(c) [of title 38, Code of Federal Regulations,] authorizes an effective date . . . up to the date of the claim to reopen."); or a "claim for increased compensation," *Bradley v. Peake*, 22 Vet.App. 280, 286 (2008) ("[The appellant] contends that the disability ratings awarded . . . were not the result of new claims for increased compensation."). *See also* 38 U.S.C. § 5110(a) ("[T]he effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor."). Motions alleging clear and unmistakable error (CUE) in a prior decision have also often been referred to as "claims." *See May v. Nicholson*, 19 Vet.App. 310, 318 (2005) ("Although no statute of limitations exists for the filing of a CUE claim, the conclusion that such a

claim cannot properly be filed while that claim is still appealable on direct review is supported by the definition of "finality" as to CUE claims that is provided in 38 C.F.R. § 20.1401(a)."). We have used the word "claim" when we really mean the specific benefit sought, for example, a "claim for dependency and indemnity compensation," *Barela v. Peake*, 22 Vet.App. 155, 156 (2008) ("[The appellant] appeals . . . a Board . . . decision that denied her claim[] for . . . dependency and indemnity compensation."), or a "claim for pension," *Ingram v. Nicholson*, 21 Vet.App. 232, 247 (2007) ("[The appellant] was informed that his claim for pension was denied . . . ."). And, we have used "claim" to refer to elements of a claim, such as a "claim for service connection," *Gallegos v. Peake*, 22 Vet.App. 329, 331 (2008) ("[T]he appellant filed a claim seeking service connection for both disorders."), or a "claim for an earlier effective date," *Edwards v. Peake*, 22 Vet.App. 29, 30 (2008) ("Accordingly, the Board denied his claim for an earlier effective date.")[3]. As the judicial review of Agency benefit decisions matures, we now see that the broad definition of "claim," as used by VA and reflected in § 3.1(p), and the Court's fluid use of the term would benefit from an attempt to bring some precision to its use in the future. Therefore, we conclude that it is now time to set forth a general principle regarding "claims" for TDIU that embraces the intent of our jurisprudence.

When a veteran submits an application for benefits to VA, it may, as VA's definition makes evident, encompass many claims; that is, each assertion of entitlement to benefits based on a specific disability that is the result of a distinct cause is a separate claim for disability compensation.[4] *See* 38 C.F.R. § 3.1(p). Thus, in a single application for benefits, a veteran might submit a claim for compensation for a knee disability resulting from a basic training accident that occurred in 1970 as well as a claim for compensation based on PTSD that the veteran believes to have been incurred during service in Vietnam in 1972. Although both are included in a single application for benefits, VA is likely to treat them as separate claims, and such treatment is not inappropriate. Each of these

---

[3] The Court notes that there is no such thing as a freestanding claim for an earlier effective date. *See Rudd v. Nicholson*, 20 Vet.App. 296, 299 (2006).

[4] This is a statement of VA's usual treatment of applications that contain assertions of multiple disabilities or conditions. It is not intended to limit the Court's recent holding that "multiple medical diagnoses or diagnoses that differ from the claimed condition do not necessarily represent wholly separate claims," and that what constitutes a claim cannot be limited by a lay veteran's assertion of his condition in his application but must be construed "based on the reasonable expectations of the non-expert, self-represented claimant and the evidence developed in processing that claim." *Clemons v. Shinseki*, No. 07-0558, 2009 WL 899773, at *4 (Vet. App. Feb. 17, 2009) (per curiam).

6

claims might just as easily have been submitted to VA on separate applications at different times following service. The mere fact that they are filed at the same time and in the same application does not change their character as separate "claims."

Our cases have been less than precise by simply adopting the term "claim for TDIU," which is commonly used in VA adjudication parlance. *See, e.g.*, *Chotta v. Peake*, 22 Vet.App. 80, 82 ("The TDIU claim was granted . . . ."); *Dunlap v. Nicholson*, 21 Vet. App. 112, 115 ("The Board noted that Mr. Dunlap had raised a claim for TDIU . . . ."). However, as its very title indicates, a finding that an individual is entitled to TDIU (**T**otal **D**isability based on **I**ndividual **U**nemployability) merely means that the veteran has met certain qualifications entitling him to a "total disability" rating; in other words, a disability rating of 100%. Rather than including those qualifications in the rating schedule, VA has provided for this means of achieving a total disability rating in a separate regulation because it potentially applies to all disabilities, or, in some cases, combinations of those disabilities. Further, the rating schedule is based on the "average impairment in earning capacity caused by a disability," whereas entitlement to TDIU is based on an individual's particular circumstance. *Thun v. Peake*, 22 Vet.App. 111, 116 (2008).

In order to be entitled to this total disability rating based on unemployability, the veteran must have already been found to have a disability that is service connected, and that service-connected disability (or disabilities) are ratable at certain percentages and the service-connected disability (or disabilities) must render that veteran unable to secure substantially gainful employment. *See* 38 C.F.R. § 4.16 (a), (b). Consequently, depending upon the status of a veteran's adjudicated disabilities at the time he or she presents evidence of unemployability, the issue of whether a total disability rating will be assigned on this basis will be handled *either* during the determination of the initial disability rating assigned at the time the underlying disability or disabilities are found to be service connected *or*, if the veteran later asserts that his disability (or disabilities) has worsened, as a claim for increased compensation.[5] *See Dalton v. Nicholson*, 21 Vet.App. 23, 32-34 (2007) (holding that a TDIU matter based on a condition that has already been service connected is an

---

[5] We note that the holdings of our cases involving "claims for TDIU" are not in conflict with what we find to be a correct statement of the law in this regard. For example, in *Chotta*, the statement that the "TDIU claim was granted" referred to a claim for an increased disability rating; in *Dunlap*, the Board was referring to an issue raised in conjunction with the appellate review of an initial disability rating. *Chotta*, 22 Vet.App. at 82; *Dunlap*, 21 Vet.App. at 115.

increased rating claim for the purpose of the application of 38 U.S.C. § 5110(b)(2)).

Although it is clear from our jurisprudence that an initial claim for benefits for a particular disability might also include an assertion of entitlement to TDIU based on that disability (either overtly stated or implied by a fair reading of the claim or of the evidence of record), it is also true that a veteran may, at any time, independently assert entitlement to TDIU based on an existing service-connected disability. Such a request is best analyzed as a claim for an increased disability rating based on unemployability. This type of claim is often referred to by VA as a "TDIU claim." As a result, VA's duties to notify and assist, as well as other requirements, apply, just as they would in any other claim for increased compensation. In either case, any issues concerning the proper treatment of the assertion of entitlement to TDIU can be resolved by considering the stage of adjudication at which the issue is raised and whether or not the veteran already has a service-connected disability.

The Federal Circuit's recent decision in *Comer v. Peake* contains language consistent with this analysis: "A claim to TDIU benefits is not a free-standing claim that must be pled with specificity; it is implicitly raised whenever a pro se veteran, who presents cogent evidence of unemployability, seeks to obtain a higher disability rating." 552 F.3d 1362, 1367 (Fed. Cir. 2009). This statement of the law is consistent with and reiterated the Federal Circuit's earlier decision in *Roberson v. Prinicpi*, involving the assignment of an initial disability rating, which reversed this Court's holding that Mr. Roberson failed to make "a claim for TDIU" and held that consideration of TDIU is required once "a veteran submits evidence of a medical disability and makes a claim for the highest rating possible, and additionally submits evidence of unemployability." 251 F.3d 1378, 1384 (Fed. Cir. 2001); *see also Bernklau v. Principi*, 291 F.3d 795, 799 (Fed. Cir. 2002) (discussing a request for TDIU in the context of a claim for increased compensation for an already service-connected disability). Further, this Court has already stated this principal clearly: "A TDIU rating is not a basis for an award of service connection. Rather, it is merely an alternate way to obtain a total disability rating without being rated 100% disabled under the Rating Schedule." *Norris v. West*, 12 Vet.App. 413, 420-21 (1999).

Considering more closely the facts of *Comer*, *Roberson*, *Bernklau*, and *Norris*, we hold that a request for TDIU, whether expressly raised by a veteran or reasonably raised by the record, is not

8

a separate claim for benefits, but rather involves an attempt to obtain an appropriate rating for a disability or disabilities, either as part of the initial adjudication of a claim or, if a disability upon which entitlement to TDIU is based has already been found to be service connected, as part of a claim for increased compensation. The distinction between the two is important for purposes of assigning an effective date for an award of compensation. Different statutory and regulatory provisions apply depending on whether the claim is an original claim or one for increased compensation. For example, generally for an original claim, the effective date can be no earlier than the date of claim. 38 U.S.C. § 5110(a)("[T]he effective date of an award based on an original claim . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor."); *see* 38 C.F.R. § 3.400(b)(2)(i) (2008). An effective date for an increased-rating claim may date back as much as one year before the date of the claim for increase if it is factually "ascertainable that an increase in disability had occurred" within that timeframe. 38 U.S.C. § 5110(b)(2); *see* 38 C.F.R. § 3.400(o)(2); *Harper v. Brown*, 10 Vet.App. 125, 126 (1997) (stating that § 3.400(o)(2) applies to claim where increase in disability precedes claim, providing that that claim is received within one year after increase, otherwise general rule in § 3.400(o)(1) applies). In either case, 38 C.F.R. § 3.156(b) may be applicable to the assignment of an effective date for an award. That section provides: "New and material evidence received prior to the expiration of the appeal period, or prior to the appellate decision if a timely appeal has been filed . . . will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period." 38 C.F.R. § 3.156(b) (2008). Accordingly, pursuant to § 3.156(b), VA must consider any new and material evidence received during the one-year appeal period following an RO decision "as having been filed in connection with the claim which was pending at the beginning of the appeal period." 38 C.F.R. § 3.156(b). Consequently, if VA incorrectly describes evidence of TDIU as a new claim for increase, rather than as part of a pending claim for an initial rating, the veteran will be deprived of the benefit of the application of § 3.156(b) in determining any effective date.

In the context of TDIU, new evidence of unemployability related to the underlying condition submitted within one year of the assignment of an initial rating that is less than the maximum sought may constitute new and material evidence under 38 C.F.R. § 3.156(b). New evidence that shows

unemployability relating to the underlying condition during the pendency of the original claim is material on its face. *Cf. Voracek v. Nicholson*, 421 F.3d 1299, 1305 (Fed. Cir. 2005) (concluding, as a matter of law, that veteran's statement that his condition "worsened" alone failed to meet the definition for materiality set forth in 38 C.F.R. § 3.156 because it did not, on its face, relate in any way to his condition during the pendency of his original claim or to any other unestablished fact necessary to substantiate his original claim). When entitlement to TDIU is raised during the adjudicatory process of the underlying disability or during the administrative appeal of the initial rating assigned for that disability, it is part of the claim for benefits for the underlying disability. And, when it is raised during the one-year appeal period following a decision on the claim, VA is required to consider the potential applicability of 38 C.F.R. § 3.156(b).

Here, Mr. Rice submitted evidence of unemployability at the same time he appealed the *initial* disability rating assigned for PTSD. R. at 379, 384. Because Mr. Rice was challenging the initial disability rating assigned for the disability upon which he based his assertion of unemployability (i.e., he claimed he was unemployable because of his service-connected PTSD), in this case, the determination of whether he is entitled to TDIU, including the effective date for that award, is part and parcel of the determination of the initial rating for that disability.

### B. Consideration of Appeal of Effective Date for TDIU

Because we find that the consideration of entitlement to TDIU and the effective date to be assigned is, in this case, necessarily part of the consideration of the appropriate initial disability rating for the underlying condition, we need not engage in an analysis of whether the issues are inextricably intertwined.[6] We will instead review the Board's decision that Mr. Rice is not entitled to an earlier effective date for the award of TDIU.[7]

We conclude that the Court has before it a final Board decision on the matter of an effective

---

[6] We decline to decide whether, in a case where TDIU is part of a claim for an increased disability rating, the issue of TDIU would be inextricably intertwined with any determination regarding the proper schedular rating of the underlying disability or disabilities.

[7] This is not to say that, just because TDIU is raised in the context of an initial adjudication of a claim, in an appropriate case, the Court could not review a schedular rating assigned by the Board even though the Board also remanded or referred an issue as to entitlement to TDIU. *See Holland v. Brown*, 6 Vet.App. 443 (1994) (reviewing Board decision denying an increased rating for service-connected rheumatoid arthritis of multiple joints even though Board referred to RO request for TDIU).

date for entitlement to TDIU. The Board's decision on the merits of the effective date for entitlement to TDIU is final because the Board denied an effective date prior to November 2000 and provided Mr. Rice with notice of his appellate rights as to its decision. Moreover, the Board considered the issue of entitlement to TDIU finally resolved and expressed no intent to continue any further Agency action on that issue. In its decision, the Board expressly determined that the effective date for TDIU was not inextricably intertwined with the matter of an the appropriate rating for PTSD: "Legally, the outcome of the TDIU effective date claim is due to factors discussed above [the date of the TDIU claim and the matter of factual ascertainability under § 3.400(o)], and not factors controlling the rating assigned for PTSD." R. at 11. In reaching its decision, the Board found that the TDIU matter was a "claim for increased compensation" and applied the statutory and regulatory provision applicable to a claim for increased compensation. R. at 5, 10.

We decline to exercise our jurisdiction to review the merits of whether the appellant was awarded an appropriate effective date. Based on the Board remand of the PTSD matter, the RO has not completed its development and adjudication of the appeal of the initial disability rating assigned for PTSD, the condition upon which entitlement to TDIU was based. Accordingly, we remand the TDIU matter for the Board's consideration following the completion of development and readjudication of the initial disability rating assigned for PTSD. We nevertheless make the following observations to guide the Board's consideration on remand. *Quirin v. Shinseki*, __ Vet.App. __, __, No. 06-2007, slip op. at 6-7 ,2009 WL 624035, at *4 (Mar. 10, 2009) (holding it appropriate for the Court "to address additional errors made by the Board, with respect to the application of the presumption of soundness, that must be corrected so as to ensure a proper decision on remand"); *see also Xerox Corp. v. 3Com Corp.*, 458 F.3d 1310, 1314-1315 (Fed. Cir. 2006) (discussing a prior decision in which the court addressed additional arguments for the express purpose of providing guidance to the district court on remand).

Mr. Rice argues that the Board erred by not applying 38 U.S.C. § 5110 and 38 C.F.R. § 3.156(b) regarding the submission of new and material evidence. He asserts that the documents he submitted regarding his unemployability did not initiate a new claim, but, because they were submitted less than one year from the RO's decision on his PTSD claim, they were filed in connection with that claim. Therefore, he argues, he is entitled to an effective date of December 23,

11

1998, the date he filed his claim for benefits for PTSD (and the effective date of benefits for that condition).

We observe that the Board did not consider § 3.156(b). As discussed above, that section provides: "New and material evidence received prior to the expiration of the appeal period, or prior to the appellate decision if a timely appeal has been filed . . . will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period." 38 C.F.R. § 3.156(b). The time period to file a NOD to an RO decision is one year. *See* 38 U.S.C. § 7105(b)(1). The RO reached its decision awarding a 30% disability rating in January 2001. Mr. Rice submitted evidence of unemployability, along with his NOD as to the initial rating assigned, in June 2001, well before the expiration of the one-year period provided by statute. The appellant's submission of evidence of his unemployability based on PTSD within the one-year period was, as a matter of law, new and material evidence under § 3.156(b). The Board should have treated this evidence as if it had been submitted in connection with Mr. Rice's December 1998 claim for compensation for PTSD. 38 C.F.R. § 3.156(b).

Instead, the Board, relying on *Hurd v. West*, stated that "a TDIU claim is a claim for increased compensation, and the effective date rules for increased compensation apply to a TDIU claim." R. at 5 (citing *Hurd v. West*, 13 Vet.App. 449 (2000)). However, *Hurd* is factually distinguishable from Mr. Rice's case because, in *Hurd*, the appellant had been in receipt of a disability rating since 1977 and asserted in 1984 and again in 1992 that his condition had worsened. *Hurd*, 13 Vet.App. at 450. Accordingly, the Court in *Hurd* properly treated the appellant's assertion of entitlement to TDIU as a claim for an increased disability rating. *Id.* at 451; *see also Dalton*, 21 Vet.App. at 32-34. However, *Hurd* does not stand for the proposition that an assertion of entitlement to TDIU is *always* a claim for increased compensation. Because we hold that the consideration of entitlement to TDIU in a case where the assignment of the initial disability rating is on direct appeal is part of the consideration of the proper initial disability rating, we conclude that the Board erred in analyzing the matter under section 5110(b)(2) and § 3.400(o)(1). *Hanson*, 9 Vet.App. at 32; *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992).

In addition, because the Board erroneously characterized the TDIU matter as claim for an increased rating, the Board limited its discussion of evidence of unemployability to the one-year

period preceding the June 2001 Notice of Disagreement that first asserted unemployability. R. at 9. On remand, it is possible that, even if the Board determines that the evidence does not establish entitlement to an initial 100% schedular disability rating for PTSD, Mr. Rice might be able to submit evidence of unemployability prior to June 2000 that would support a finding of entitlement to TDIU earlier than the November 2000 effective date assigned by the Board after its limited discussion of the evidence in this matter.

The Board remanded the matter of the initial disability rating for PTSD for further development and readjudication. In light of the Court's holding regarding the proper treatment of assertions of entitlement to TDIU when the initial disability rating remains at issue, we conclude that it was error for the Board not to also remand the matter of the proper effective date for the award of TDIU when it remanded the issue of the proper disability rating for the underlying disability. On remand, Mr. Rice is free to submit additional evidence and argument in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). For its part, the Board should review all the evidence of record and consider, if necessary, the application of staged ratings. *See Fenderson v. West*, 12 Vet.App. 119, 126 (1999) (noting that staged ratings are assigned at the time an initial disability rating is assigned). The Board should also proceed expeditiously, in accordance with 38 U.S.C. § 7112 (expedited treatment of remanded claims).

### III. CONCLUSION

Upon consideration of the forgoing, the Court's April 9, 2008, decision is WITHDRAWN, and this opinion is issued in its stead. The Board's January 27, 2006, decision denying entitlement to an effective date earlier than November 1, 2000, for TDIU is VACATED and the matter is REMANDED for readjudication consistent with this opinion.