# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-4193

FRANKLIN A. GREEN, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 19, 2023)                                    Decided February 16, 2024)

*Haley Smith*, of Little Rock, Arkansas, for the appellant.

*Dennis Pitman*, with whom *Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Amanda M. Haddock*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, GREENBERG, and JAQUITH, *Judges*.

JAQUITH, *Judge*, filed the opinion of the Court. PIETSCH, *Judge*, filed an opinion concurring in part and dissenting in part.

JAQUITH, *Judge*: U.S. Navy veteran Franklin A. Green appeals a February 22, 2021, Board of Veterans' Appeals decision (Board) that denied entitlement to a total disability rating based on individual unemployability (TDIU) based on the lack of a service-connected disability at the time of the Board decision, while also granting service connection for an acquired psychiatric disorder. As we will explain, we hold that the Board erred in that decision, and we remand the TDIU matter for readjudication.

## I. BACKGROUND

The veteran honorably served on active duty from July 1998 to June 1999, when he was discharged for having a "personality disorder." Record (R.) at 1135. In March 2013, he applied for disability compensation for a bipolar disorder and TDIU. R. at 1455-57. An April 2013 rating decision by a VA regional office (RO) denied his claims, characterizing his bipolar disorder claim as one for an acquired psychiatric disorder. R. at 1349-53. In February 2014, the veteran submitted

a Notice of Disagreement (NOD), R. at 1334, leading to an August 2014 Statement of the Case (SOC) that repeated the RO's denial. R. at 1263-65.

In August 2017, the veteran again sought service connection for a bipolar disorder and entitlement to TDIU. R. at 1084-88. At that time, he also submitted a formal TDIU application in which he stated: "Depression and [m]ania affect my ability to work" and "[c]aused me to be discharged from [the] military." R. at 446. In November 2017, the RO denied service connection for an acquired psychiatric disorder (claimed as a bipolar disorder) based on a lack of new and material evidence and denied entitlement to TDIU. R. at 429. That same month, the veteran submitted another formal TDIU application in which he explained that his bipolar disorder, personality disorder, and post-traumatic stress disorder (PTSD) caused his unemployability. R. at 411-13.

Also in November 2017, the veteran submitted an NOD, asserting that "[t]he VA ignores the diagnosis and treatment records from both [Appalachian Behavioral Health] and [Summit Behavioral Health] that put[] the mental problems back to the time I was in the military," and "I have been unable to hold a job since leaving the service." R. at 408. He submitted another NOD in January 2018. R. at 356. A June 2019 SOC denied service connection for an acquired psychiatric disorder (bipolar disorder) based on a lack of new and material evidence and denied entitlement to TDIU. R. at 242-43. In denying TDIU, the RO explained: "You have no service[-]connected disabilities." *Id.* In August 2019, the veteran appealed the SOC and opted in to the AMA system.[1] R. at 106.

In February 2021, the Board granted service connection for the veteran's acquired psychiatric disorder, relying on a favorable medical opinion from September 2019 that the veteran submitted. R. at 13. But the Board denied TDIU "as a matter of law," reasoning that "[a]t the time of the 2019 Statement of the Case—which is the AMA 'decision' on appeal—the Veteran did not have any service-connected disabilities." R. at 19. The Board acknowledged that its decision also granted service connection for an acquired psychiatric disorder, but the Board found that "that

---

[1] Veterans Appeals Improvement and Modernization Act of 2017 (AMA), Pub. L. No. 115-55, 131 Stat. 1105 (codified as amended in scattered sections of 38 U.S.C.). The AMA is a sweeping piece of legislation that extensively overhauled the administrative appeals process concerning VA benefits decisions. Congress provided that certain administrative appeals would be processed under the legacy system, while others would proceed under the new AMA system.

2

cannot be considered in the AMA appeals system, as the claim must be decided back on the state of the evidence that was before the RO (or was submitted as part of the AMA appeal)." *Id*. The Board noted that in the legacy appeals system, the Board would have "remanded the issue of entitlement to a TDIU pending the establishment of a disability rating and effective date for the service connection claim granted herein," but the Board maintained that "that is not appropriate under the AMA system." R. at 20. The Board explained: "A remand can only be done in AMA for a pre-decisional duty to assist error, and there could be no such error here as the Veteran had no service-connected disabilities at the time of the AMA decision." *Id*. The Board denied TDIU, explaining that the veteran could seek TDIU by filing a supplemental claim. *Id*. This appeal followed.

While the veteran's appeal was pending, the Secretary has twice notified the Court, pursuant to *Solze v. Shinseki*, 26 Vet.App. 299, 301 (2013) (per curiam order), of additional developments in the veteran's claims.

On May 4, 2021, the RO issued a rating decision implementing the Board's grant of service connection for an acquired psychiatric disorder and assigned ratings of 30%, effective August 11, 2017; 50%, effective September 13, 2019; and 70%, effective April 21, 2021. Secretary's April 3, 2023, *Solze* Notice (*Solze* II), Exhibit A. On June 4, 2021, the veteran appealed the May 2021 rating decision. *Solze* II, Exhibit B. His appeal was placed on the Board's docket the same month. *Solze* II, Exhibit C.

In a December 28, 2021, rating decision, the RO granted TDIU, effective April 21, 2021— "the date [the veteran] first met schedular criteria for entitlement [to TDIU]." Secretary's May 10, 2022, *Solze* Notice (*Solze* I), Exhibit A at 1-3. On February 2, 2022, the veteran appealed the effective date assigned for TDIU in the December 2021 rating decision. *See Solze* I, Exhibit B.

## II. THE PARTIES' ARGUMENTS

### A. Mootness

The Secretary argues that the matter is moot because TDIU has been granted and the veteran has appealed the assigned effective date. Secretary's Brief (Br.) at 5-8. He explains that a finding that the Board should have remanded the TDIU issue "would at best send the issue of an entitlement to [an] earlier effective date for the award of TDIU based on 38 C.F.R. § 4.16(b), back to the Board." *Id*. at 7. At oral argument, the Secretary offered that "by its very nature, the

assignment of new ratings for a service-connected disability changes the factual basis," so the Board's denial of TDIU does not preclude the RO from considering TDIU based on the underlying grant of service connection. *See* Oral Argument (OA) at 27:26-28:06, https://www.youtube.com/watch?v=p2lphIsekZs.

The veteran argues that the case is not moot because it could affect his entitlement to an earlier effective date for TDIU. Reply Br. at 1-4. He reasons that the Board's decision concerns entitlement to TDIU for the period prior to February 22, 2021, the date of the decision, and TDIU was only granted effective April 21, 2021. *Id.* at 3. The veteran contends that "he is entitled to an effective date at least as early as August 2017, when he applied for TDIU." *Id.* He asserts that "there is no circumstance under which the [agency of original jurisdiction (AOJ)][2] will ignore a Board decision that, as a matter of law, found that there is no entitlement to TDIU prior to February 2021." *Id.* At oral argument, the veteran's counsel explained that "in order for a supplemental claim to be readjudicated, [the veteran] would have to present new and relevant evidence, and there is no evidence that can overcome this Board's denial as a matter of law." OA at 16:28-41.

### B. Jurisdiction

The veteran argues that the Board did not have jurisdiction to deny the downstream issue of entitlement to TDIU before the AOJ made a final determination on the issue. Appellant's Br. at 5-11. He explains that TDIU is part and parcel of a disability rating, which is a downstream issue that only comes into appellate status once service connection is granted. *Id.* at 6. He asserts that the November 2017 and June 2019 denials of TDIU were not initial or final determinations on the merits of TDIU, so the Board did not have jurisdiction over the issue of TDIU on the merits. *Id.* at 10.

The Secretary responds that the Board had jurisdiction to adjudicate TDIU because the November 2017 rating decision and June 2019 SOC explicitly denied TDIU. Secretary's Br. at 8-9, 11. He argues that the Board "addressed TDIU as the result of an explicit claim and a direct appeal of the issue from the AOJ, not as it pertained to the rating assigned for an acquired psychiatric disability." *Id.* at 11.

---

[2] The AOJ is usually an RO, as it is in this case. *See Fenderson v. West*, 12 Vet.App. 119, 128 (1999).

4

## C. Merits

The veteran argues that the Board clearly erred when it relied on the erroneous fact that the veteran was not service connected for any disabilities to deny TDIU. Appellant's Br. at 17-20. He asserts that the Board too narrowly interpreted its authority to remand claims under 38 C.F.R. § 20.802(a). *Id.* at 18. The Secretary responds that the Board's denial was a matter of law "and relied on no evidentiary findings, to include whether Appellant was entitled to service connection for any disability." Secretary's Br. at 11. At oral argument, the Secretary conceded: "We acknowledge that the Board erred in identifying the grant of service connection as evidence that it was precluded from considering." OA at 24:59-25:08. He continued: "A grant of service connection is not evidence." OA at 25:09-11.

The Secretary maintained that "[t]he Board was not in a position where it could have granted TDIU at the time of the decision on appeal. At most, it could have remanded it as intertwined and perhaps at the time that would have been the preferable course of action." OA at 32:14-35. He explained that under 38 C.F.R. § 20.802(a), the Board had limited options because "the only mandatory grounds for remand are for a duty-to-assist error." OA at 32:36-46.

## III. ANALYSIS

### A. The Board Had Jurisdiction

"It is well settled that the Court has jurisdiction to determine whether the Board had jurisdiction to take the action it takes in a decision." *Young v. Shinseki*, 25 Vet.App. 201, 203 (2012) (en banc). To make that determination, we look to 38 U.S.C. § 7104, "Jurisdiction of the Board." Section 7104(a) provides as follows: "All questions in a matter which under section 511(a) of this title is subject to decision by the Secretary shall be subject to one review on appeal to the Secretary. Final decisions on such appeals shall be made by the Board." Under section 511(a), "[t]he Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." A VA regulation synthesizes the two statutes thus:

> All questions of law and fact necessary to a decision by the Secretary of Veterans Affairs under a law that affects the provision of benefits by the Secretary to veterans or their dependents or survivors are subject to review on appeal to the Secretary. Decisions in such appeals are made by the Board of Veterans' Appeals.

38 C.F.R. § 20.104(a) (2023). In sum (and in practice), the Board has jurisdiction to render final agency decisions on appeals of veterans benefits decisions generally made by designated adjudicative personnel in VA's regional offices. *See Encarnacion v. McDonough*, 36 Vet.App. 194, 199-200 (2023); *Wages v. McDonald*, 27 Vet.App. 233, 239 (2015) (Kasold, C.J., concurring); *Prewitt v. McDonough*, 36 Vet.App. 1, 14-15 (2022) (order) (Jaquith, J., concurring).

In this case, it is clear that the Board had jurisdiction to decide the TDIU issue presented. Mr. Green's application for TDIU plainly sought veterans benefits within the meaning of section 511(a). He submitted an "application for disability compensation and related compensation benefits" for bipolar disorder and unemployability, R. at 1084-88, and a "veteran's application for increased compensation based on unemployability," R. at 445-47. An RO denied his TDIU application. R. at 429-32. The veteran submitted another application for TDIU, R. at 411-13, and two NODs, R. at 356-57, 407-08. The RO issued an SOC continuing to deny the veteran's TDIU application. R. at 198-244. And the veteran appealed the denial of TDIU. R. at 106. The mandatory claims processing rules were followed. *See Hall v. McDonough*, 34 Vet.App. 329, 332–33 (2021). And the Board rendered a decision on the veteran's appeal, interpreting laws that affect the provision of benefits. The Board acted within its jurisdiction. We turn now to the Board's exercise of its jurisdiction.

## B. The Board's TDIU Decision

### 1. The Veteran's Underlying Disability

In analyzing the evidence of the veteran's psychiatric disorder, the Board began with an in-service psychiatric evaluation that diagnosed an "'adjustment disorder with mixed emotions and conduct personality disorder, not otherwise specified (NOS), with narcissistic, antisocial and passive aggressive features, occupational stressors.'" R. at 11. "[P]ersonality disorders are not diseases or injuries for compensation purposes, and . . . disability resulting from them may not be service-connected." 38 C.F.R. § 4.127 (2023); *see* 38 C.F.R. §§ 3.303 (c), 4.9 (2023). The Board cited an August 2012 VA examiner who also diagnosed a personality disorder, private treatment records from 2012 that reflected that diagnosis, and a February 2013 VA examiner who "confirmed the personality disorder diagnosis." R. at 12-13. The Board referenced records of private treatment from January 2016 to September 2017 for a bipolar disorder and a forensic evaluation in December 2017 by a psychologist, who likewise opined that the veteran met the criteria for bipolar disorder and that the past diagnoses of personality disorder "'had been based on behaviors exhibited during

an acute phase of his mental illness.'" R. at 13. The Board also noted that the veteran's Social Security Administration records reflected both an August 2011 diagnosis of a personality disorder and a March 2013 disability determination for a bipolar disorder and a personality disorder. R. at 14.

Based on the medical records regarding the veteran's acquired psychiatric disorders, including his personality disorder and bipolar disorder, the Board asserted that "all of the examiners who addressed the etiology of the diagnosed conditions opined that the diagnosed condition(s) was/were not related to the Veteran's active service," and "none of the competent medical opinions of record prior to June 2019 supported the Veteran's claim." R. at 15. However, the Board did not acknowledge the apparent inconsistency between its assertions and the December 2017 psychologist's opinion that the veteran suffered from a bipolar disorder and that the personality diagnoses "'had been based on behaviors exhibited during an acute phase of his mental illness.'" R. at 13. And the record does not include the medical records themselves—only the Board's assessment of them. Based on the medical evidence from February 2013 until September 2019, the RO, in May 2021, rated the veteran's acquired psychiatric disorder at 30%, effective August 11, 2017. *Solze* II, Exhibit A at 3.

In granting service connection for the veteran's acquired psychiatric disorder, to include bipolar disorder, the Board relied heavily on the September 2019 opinion from the private psychologist that concluded that the veteran's bipolar disorder "is etiologically related to his active service," R. at 15, and that the veteran had been "misdiagnosed (including during service) as having a personality disorder," R. at 16. The Board found the September 2019 opinion compelling based on "the credentials of the author, the thoroughness of the discussion and rationales, and the force of the reasoning." R. at 16. Based on the September 2019 opinion, in May 2021 the RO rated the veteran's acquired psychiatric disorder at 50%, effective September 13, 2019. *Solze* II, Exhibit A at 4. After the Board decision, the RO, in May 2021, rated the veteran's acquired psychiatric disorder at 70%, effective April 21, 2021, based on an April 2021 VA examination. *Solze* II, Exhibit A at 5.

### 2. TDIU

Regarding TDIU, the veteran had (in November 2017) asserted that his bipolar disorder started in service and that he had been "unable to hold a job since leaving the service." R. at 408. The veteran had applied for TDIU in March 2013, R. at 1456-57, August 2017, R. at 446, 1088,

7

and November 2017, R. at 411. The RO denied TDIU in rating decisions in April 2013, R. at 1349-53, and November 2017, R. at 429, and in SOCs in August 2014, R. at 1263-68, and June 2019, R. at 242-43. And the veteran appealed the June 2019 SOC to the Board via an August 2019 NOD. R. at 106.

TDIU is awarded when VA determines that a veteran is "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities" and meets specified rating requirements. 38 C.F.R. § 4.16(a) (2023); *see Snider v. McDonough*, 35 Vet.App. 1, 6 (2021). The regulation provides that, for TDIU to be awarded based on only one service-connected disability, it must be ratable at 60% or more, and if there are two or more disabilities, at least one must be ratable at 40% or more, and the veteran must have a combined rating of 70% or more. 38 C.F.R. § 4.16(a). "When the veteran does not meet those rating requirements, TDIU may be granted on an extraschedular basis under 38 C.F.R. § 4.16(b), which instructs VA adjudicators to refer to the Director of Compensation Services 'all cases of veterans who are unemployable by reason of service-connected disabilities.'" *Snider*, 35 Vet.App. at 6 (quoting 38 C.F.R. § 4.16(b)).

"[A] request for TDIU . . . is not a separate claim for benefits, but rather involves an attempt to obtain an appropriate rating for a disability or disabilities." *Rice v. Shinseki*, 22 Vet.App. 447, 453 (2009) (per curiam). TDIU "is merely an alternate way to obtain a total disability rating without being rated 100% disabled under the Rating Schedule." *Norris v. West*, 12 Vet.App. 413, 420–21 (1999). And a veteran may pursue TDIU "either as part of the initial adjudication of a claim or, if a disability upon which entitlement to TDIU is based has already been found to be service connected, as part of a claim for increased compensation." *Rice*, 22 Vet.App. at 453-54. Whether the claim is an original one or a claim for increased compensation may affect the effective date for any award. *Id.* at 454; *see* 38 U.S.C. § 5110; 38 C.F.R. § 3.400 (2023). Because TDIU is an evaluation of a disability or disabilities that have been determined to be service connected, "the effective date of TDIU cannot be earlier than the effective date of the award of service connection for the disability or disabilities upon which the award of TDIU is based." *Delrio v. Wilkie*, 32 Vet.App. 232, 248 (2019).

### 3. The Board's Errors

The Board did not consider the merits of the veteran's TDIU claim, instead finding as follows:

> At the time of the 2019 Statement of the Case – which is the AMA "decision" on appeal – the Veteran did not have any service-connected disabilities. Absent any service-connected disabilities, the claim for a TDIU must be denied as a matter of law.
>
> Although the Veteran has been granted service connection for an acquired psychiatric disorder, to include bipolar disorder, herein, that cannot be considered in the AMA appeals system, as the claim must be decided back on the state of the evidence that was before the RO (or was submitted as part of the AMA appeal).

R. at 19. The Board's assessment of the AMA is belied by its applicable provisions and our caselaw.

When Mr. Green opted in to the AMA system with his August 2019 NOD, the Board review option he chose was to have additional evidence he submitted reviewed by a veterans law judge.[3] R. at 106. Under the AMA system, in cases with a request to submit additional evidence but no request for a hearing, "the evidentiary record before the Board shall be limited to the evidence considered by the agency of original jurisdiction in the decision on appeal," plus "[e]vidence submitted by the appellant and his or her representative, if any, with the notice of disagreement" and "within 90 days following receipt of the notice of disagreement." 38 U.S.C. § 7113(c); *see* 38 C.F.R. § 20.303 (2023). Neither the September 2019 opinion from the private psychologist nor the date the veteran submitted it are in the record before the Court, but the Board considered the opinion and found it to be pivotal—"particularly worthy of probative weight" and effective in rebutting points made by VA examiners, R. at 16—and relied on it to award service connection for the veteran's acquired psychiatric disorder. These circumstances show that the September 2019 opinion was timely, included in the evidentiary record before the Board, and properly relied on—in granting service connection for the veteran's acquired psychiatric disorder and in considering that service-connected disability when assessing the veteran's TDIU application. *See* 38 C.F.R. § 20.801(a) (2023) ("Decisions of the Board will be based on a de novo review of the evidence of record at the time of the agency of original jurisdiction decision on the issue or issues on appeal, and any additional evidence submitted pursuant to . . . [38 C.F.R.] §§ 20.302 and 20.303"). But the Board's service connection decision was not evidence.

"Evidence is defined as '[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact.'" *Aviles-Rivera v.*

---

[3] "A Member of the Board (other than the Chairman) may also be known as a Veterans Law Judge." 38 C.F.R. § 20.101(b) (2023).

*McDonough*, 35 Vet.App. 268, 277 (2022) (quoting BLACK'S LAW DICTIONARY (11th ed. 2019)), *appeal docketed*, No. 22-2084 (Fed. Cir. Aug. 1, 2022). A Board decision is not evidence. *Hime v. McDonald*, 28 Vet.App. 1, 7 (2016) ("[A]lthough a Board decision represents the Board's determination as to the correct facts of a case and the application of law to those facts, a Board decision is not, itself, evidence."), *aff'd sub nom. Hime v. Shulkin*, 681 F. App'x 976 (Fed. Cir. 2017).

Then the Board compounded its error by identifying the decision the Board's determinations would otherwise dictate—"remand[ing] the issue of entitlement to TDIU pending the establishment of a disability rating and effective date for the service connection claim [for an acquired psychiatric disorder] granted herein"—but pronouncing itself powerless to remand the issue because "that is not appropriate under the AMA system." R. at 20. The Board explained that "[a] remand can only be done in AMA for a pre-decisional duty to assist error." *Id*. But that explanation is incorrect. The Board also has the discretion to "remand for correction of any other error by the [AOJ] in satisfying a regulatory or statutory duty, if correction of the error would have a reasonable possibility of aiding in substantiating the appellant's claim." 38 C.F.R. § 20.802(a) (2023). The Board identified the issue for it to have remanded here—service connection for the veteran's acquired psychiatric disorder. *See* 38 C.F.R. § 20.801(b)(4).

C. Mootness

This Court adopts the rule from Article III, Section 2 of the U.S. Constitution that our jurisdiction only extends to a "case or controversy." *Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990). A live case or controversy must be present at the outset of an appeal and persist while it is pending. *See Cardona v. Shinseki*, 26 Vet.App. 472, 474 (2014). As a jurisdictional requirement, the Court has an independent duty to ensure that a case or controversy still exists. *Kernz v. McDonough*, 36 Vet.App. 372, 381 (2023) (en banc); *Demery v. Wilkie*, 30 Vet.App. 430, 434 (2019). "'If an appellant receives the benefit or relief sought before the Court reaches a decision, the case becomes moot, and the appeal must be dismissed.'" *Kernz*, 36 Vet.App. at 381 (quoting *Philbrook v. Wilkie*, 32 Vet.App. 342, 345 (2020)). A case is moot when "it is impossible for [the Court] to grant 'any effectual relief whatever' to [the appellant] in the event that he [or she] prevails." *Philbrook*, 32 Vet.App. at 345 (quoting *Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019)), *rev'd on other grounds sub nom. Philbrook v. McDonough*, 15 F.4th 1117 (Fed. Cir.

2021); *see Kernz*, 36 Vet.App. at 387. This mootness standard is a demanding one. *Philbrook*, 32 Vet.App. at 345; *Mission Prod. Holdings*, 139 S. Ct. at 1660.

According to the Secretary's *Solze* notices, the RO has issued two relevant rating decisions since the Board decision on appeal: one rating the veteran's acquired psychiatric disorder at 30%, effective August 11, 2017; 50%, effective September 13, 2019; and 70%, effective April 21, 2021; and one granting TDIU, effective the date of the 70% rating. The veteran has appealed both decisions, but the Board has not yet decided either appeal, so how the Board decision on appeal will affect these later appeals is unknown. By regulation, "previously issued Board decisions will be considered binding only with regard to the specific case decided." 38 C.F.R. § 20.1303 (2023). "[I]t is well established that Board decisions are not precedential or binding on other veterans." *Gray v. McDonald*, 27 Vet.App. 313, 328 (2015). And the Court has held that "[t]he Board's decision to refer the TDIU issue and its decision to award a rating are different and distinct decisions such that the Board isn't precluded [by § 20.1303] from denying an extraschedular rating after referring a claim for extraschedular consideration." *Ray v. Wilkie*, 31 Vet.App. 58, 65 (2019). These cases offer little insight into how the Board will apply § 20.1303 here, where the veteran first applied for TDIU in August 2017, the RO has awarded schedular TDIU from the date of the veteran's 70% disability rating in April 2021, and the Board has denied TDIU "as a matter of law" for the period prior to its February 2021 decision.[4]

The veteran argues that the case is not moot because the Board's denial of TDIU prior to February 2021 "as a matter of law" could affect his entitlement to an effective date that corresponds to his application for TDIU in August 2017. Reply Br. at 1-4. When the effect of a Board error on the outcome of a proceeding is unquantifiable, we should not speculate as to what the outcome might be; we should vacate the erroneous decision that could adversely affect the determination. *See Southall-Norman v. McDonald*, 28 Vet.App. 346, 356 (2016) (first quoting *Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir. 2004) ("'Where the effect of an error on the outcome of a proceeding is unquantifiable, however, we will not speculate as to what the outcome might have

---

[4] In the context of a motion for revision based on clear and unmistakable error, the Court has noted that denial "as a matter of law" is reserved for applications that cannot possible be granted, and thus has preclusive effect. *Perciavalle v. McDonough*, 35 Vet.App. 11, 31-32 (2021), *aff'd in part, vacated in part on other grounds*, 74 F.4th 1374 (Fed. Cir. 2023). *See also Philbrook v. McDonough*, 15 F.4th 1117, 1118-21 (Fed. Cir. 2021) (reversing this Court's affirmance of the Board's denial of TDIU "as a matter of law" under 38 U.S.C. § 5313(c), precluding a TDIU rating during a veteran's incarceration for a felony, because the veteran was committed to a mental institution, not a penal institution).

been had the error not occurred.'"); and then quoting *Arneson v. Shinseki*, 24 Vet.App. 379, 389 (2011) (finding prejudice when the error "'could have altered'" the Board's determinations)).

Nonetheless, the Secretary argues that the matter is moot because TDIU has been granted, and the veteran has appealed the assigned effective date. Secretary's Br. at 5-8. The Court rejected a similar argument in *Bailey v. Wilkie*, 33 Vet.App. 188, 204-05 (2021). The RO's December 2021 rating decision granting TDIU reflects that it was responsive to a July 2021 application, an October 2021 rating decision, and a November 2021 request for higher level review. *Solze* Notice I, Exhibit A at 1-2. In *Bailey*, the Court declared that "the RO decision could not and did not divest the Board of jurisdiction over the veteran's initial appeal, and a remand is necessary to process that appeal to completion." *Bailey*, 33 Vet.App. at 204. It is just so in this case. Although the December 2021 RO decision could grant TDIU based on the July 2021 claim stream, only a Board decision can resolve the instant claim stream. *See id.* at 203 (citing *Warren v. McDonald*, 28 Vet.App. 214, 221-22 (2016)). Here, as in *Bailey*, "such a remand, which preserves the possibility of an earlier effective date and safeguards against any preclusive effect of the later RO decision, constitutes effective relief that the Court can provide" and confers the right to expeditious treatment of the veteran's application. *Bailey*, 33 Vet.App. at 204-05.

### IV. CONCLUSION

Upon consideration of the foregoing, the portion of the February 22, 2021, Board decision denying entitlement to TDIU is VACATED, and the matter is REMANDED for further adjudication consistent with this decision. The balance of the appeal is DISMISSED.

PIETSCH, *Judge*, concurring in part and dissenting in part: Though I agree with much of the majority's analysis, I write separately because I do not believe we need to address the merits of the Board's decision. In my view, the Board was without jurisdiction to address entitlement to TDIU.

In *Rice v. Shinseki*, the Court clearly stated that "there is no freestanding claim for TDIU." 22 Vet.App. 447, 451 (2008); *see also Comer v. Peake*, 552 F.3d 1362, 1367 (Fed. Cir. 2007). Thus, TDIU was not a separate matter over which the Board had jurisdiction, contrary to what the majority holds in its opinion. Instead, entitlement to TDIU was part of Mr. Green's original claim

for benefits for an acquired psychiatric disorder and should have been returned to the RO with the Board's grant of benefits for that condition.[5]

Assuming the Court's analysis in *Rice* was followed in this case, the matter of entitlement to TDIU was sent back to the RO by the Board when it returned Mr. Green's newly granted claim for benefits for an acquired psychiatric disorder for the RO to assign an initial disability rating and effective date in the first instance. *See Rice*, 22 Vet.App. at 253. When the Board issued its decision, the RO had not yet decided the appropriate initial disability rating for Mr. Green's acquired psychiatric disorder, which could have included a rating of TDIU; therefore, the Board did not have jurisdiction to address it. 38 C.F.R. § 20.104. The presence of an application, NOD, or appeal referring to TDIU alone did not give the Board jurisdiction over that matter, contrary to the majority's opinion.

Although I disagree with the majority about the type of error committed by the Board, I agree that the effect of the Board's error is not clear.[6] *See Philbrook v. Wilkie*, 32 Vet.App. 342, 345 (2020), *rev'd on other grounds sub nom. Philbrook v. McDonough*, 15 F.4th 1117 (Fed. Cir. 2021). And thus, the Court cannot find the issue moot in this case. *Id*. However, because I find the error to be the Board's issuing a decision on a matter over which it did not have jurisdiction, I would vacate the part of the Board decision that denied TDIU and dismiss this appeal rather than remand the matter for readjudication.

---

[5] Curiously, the Board did not remand the claim or refer the grant of benefits for an acquired psychiatric disorder to the RO for the assignment of an initial disability rating and effective date. The Board granted benefits and was silent concerning a disability rating and effective date. However, the matter was returned to the RO, as established by the May 2021 RO decision contained in the Secretary's April 3, 2023, *Solze* Notice. In that decision, the RO implemented the Board's decision and assigned Mr. Green's condition an initial disability rating and effective date and increased ratings with corresponding effective dates. If the Board had clearly remanded the grant of benefits for Mr. Green's acquired psychiatric disorder, I would be more inclined to address the merits and agree with the majority that remand was permitted under 38 C.F.R. § 20.802(a).

[6] This is not to say that I disagree with the majority's analysis finding error with the merits of the Board's decision. Because I believe the Board lacked jurisdiction, I do not believe that we need to address the merits of the decision.